## Commonwealth v. Petrillo, Appellant.

Argued November 19, 1945. Before BALDRIGE, P. J., RHODES, RENO, DITHRICH, ROSS and ARNOLD, JJ. (HIRT, J., absent).

*William A. Gray*, with him *Vincent P. Desmond*, for appellant.

*Joseph E. Pappano,* Assistant District Attorney, with him *Edward H. Bryant, Jr.,* Assistant District Attorney, *C. William Kraft, Jr.,* District Attorney, and *Wm. R. Toal,* First Assistant District Attorney, for appellee.

OPINION BY DITHRICH, J., January 18, 1946:

The appellant's residence was one of three alleged bookmaking establishments in Chester, Delaware County, simultaneously raided by the Pennsylvania State Police on November 24, 1944. He entered a plea of guilty to bookmaking and establishing a gambling place and was sentenced to pay a fine and undergo imprisonment in the Delaware County Jail. The District Attorney then obtained a rule to show cause why the sum of $1030 seized at the time of the raid should not be declared contraband and be forfeited. After hearing, the rule was made absolute.

The proceeding is in rem and we are not here concerned with the proceeding in personam against appellant in whose possession the money was found. See *Com. v. Heiland,* 113 Pa. Superior Ct. 534, 173 A. 759. Nor is the Commonwealth held to the same degree of proof as in a criminal proceeding where the issue is between the Commonwealth and a defendant under indictment. In this appeal, "The issue is whether a judicial fact finder could reasonably be satisfied from all the evidence . . . :" *Urban's Appeal,* 148 Pa. Superior Ct. 101, 113, 24 A.2d 756, ". . . that it (the money) formed an integral part of the illegal gambling operation and, being commingled with other such money, had not, previous to the seizure, been reclaimed and taken back into his own possession by the player, nor been received and reduced to the exclusive possession and ownership of the . . . proprietor of the gambling establishment:" *Rosen v. Le Strange,* 120 Pa. Superior Ct. 59, 61, 181 A. 797.

The validity of the order of forfeiture is challenged upon the ground that the evidence produced by the Com-

monwealth (appellant having offered none) was legally insufficient to support it. The distinction between a proceeding in rem and one in personam ". . . obviously affects both the quantum and quality of the evidence essential to sustain the affirmative of the respective issues:" *Urban's Appeal*, supra, p. 113.

Upon a review of the Commonwealth's evidence we are convinced that it was sufficient to satisfy an unbiased mind to that degree of certainty which a judicial disposition of the issue requires. When the State Police entered the premises of appellant one of the officers announced: "State Police. It's a raid." One Margolis who was in the room with appellant and who was jointly indicted with him, immediately tore up a sheet of paper on which there were registered names and bets and the names of horses that were running that day. The appellant pulled $638 from his right trousers' pocket and attempted to conceal it under the cushion of the chair on which he was sitting; and when asked why he was trying to conceal it he said he didn't want the police to take it. The remainder of the $1030 seized, to-wit, the sum of $392, was taken from his left trousers' pocket. While the officers were there they answered numerous telephone calls. The callers were asking for "Scratchy," a nickname for the appellant, and requesting information on the results of the races.

The appellant filed an answer to the petition of the District Attorney in which he averred that some of the money was his personal money and some of it belonged to his wife. At the hearing neither he nor his wife offered any evidence in support of the averments in the answer. It was within the province of the learned judge of the court below to draw reasonable inferences and make reasonable deductions from the testimony. It could reasonably be inferred that Margolis had gone to Petrillo's bookmaking establishment and turned some money in to him. The fact that Margolis tore up the paper on which were recorded the bets and the names of the bet-

ters and that appellant attempted to conceal part of the money he had in his pockets, is evidence from which the court could infer that the money held by Petrillo was turned in by Margolis and was being held awaiting the results of the races and the determination of the winners. The testimony was uncontradicted, unchallenged, and unanswered by the appellant. In *Rosen v. Le Strange*, supra, p. 61, we held that: "Money is not, ordinarily, itself, an instrumentality of gambling . . . Money may, nevertheless, be subject to seizure, . . . when the circumstances are such that it is clearly apparent that it formed an integral part of the illegal gambling operation . . ." In the circumstances we are of the opinion that the learned judge of the court below was warranted in ordering the money seized to be forfeited.

The order is affirmed.