# Winger's Petition

*William A. Sykes*, District Attorney, for petitioner.
*Alex S. Scribner*, for respondent.

LONG, P. J., May 10, 1946.—From the return, petition, waivers and stipulations of counsel we find the following

### Facts

1. That the petitioner, a corporal of the Pennsylvania State Police, on April 13, 1946, while in the

course of the performance of his duties and lawfully on the premises of Blake E. Irvin Home Association of the Veterans of Foreign Wars, located at 274 Main Street, Brookville, Jefferson County, Pennsylvania, seized upon, secured and removed from said premises certain devices and machines used and employed for the purposes of unlawful gambling, together with their contents, consisting of money and checks used in such gambling and forming an integral part of said illegal machines and devices.

2. That said gambling machines and devices are what are commonly known as slot machines and were employed for the purposes of unlawful gaming and are incapable of lawful use, and adaptable and usable only for the purposes of unlawful gambling.

3. That said gambling machines and devices when so seized upon were owned and in the possession of respondent.

4. That said gambling machines and devices and said money and checks are now lodged in the court house at Brookville, Pa., in the custody of Joe Shaffer, sheriff of Jefferson County, and their nature and description are as set forth upon a schedule attached to the petition and lettered A, said Schedule A having described nine slot machines and one cigarette machine, stating the serial number of all machines, except two.

5. That petitioner prays the court to adjudge said gambling machines and devices, as scheduled, to be forfeited and to order the same to be publicly destroyed, and the money contained in said machines and devices to be adjudged forfeited, confiscated and delivered to and for the use of the County of Jefferson in accordance with section 60 of the Criminal Code of March 31, 1860, P. L. 382, as amended, 18 PS §1445.

6. That said return and petition to destroy were presented to the next court of quarter sessions on April 22, 1946, and a preliminary order made thereon, re-

turnable May 8, 1946, at 9 a.m., Eastern Standard Time.

7. That on April 30, 1946, defendant appeared by its attorney, waived the issuance of a rule to show cause, admitted each and every averment of fact contained in the aforesaid petition and return, waived any irregularities or errors in the proceedings and consented to the making and entering of the order prayed for in the petition, except as to money in the machines, and such other order as the court may deem necessary, fit and just in the premises, to the end that the prayer thereof is granted and the devices and machines described in the petition be destroyed and confiscated as prayed for.

8. That respondent filed no answer to the return and petition to destroy gambling devices.

9. That a hearing was held on May 8, 1946, at 9 a.m., Eastern Standard Time, at which time petitioner and respondent appeared.

10. That at said hearing counsel for respondent admitted: "That the money averred in the petition to have been seized was taken by the seizing officer from the gambling devices and machines set forth in the petition at the time of seizure and that such money formed an integral part of said illegal and unlawful machines and devices."

11. That all of the facts set forth in the return and petition and stipulations of counsel were offered in evidence and are admitted facts.

### Discussion

Respondent has admitted that the money contained in the seized slot machines formed an integral part of said unlawful gambling devices. However, its learned counsel contends that because the statute is silent as to what order the court shall make as to such seized moneys that it will be warranted in directing

that the same shall be returned to the rightful owners thereof or be paid over to a designated worthy charity.

Here the money had not, previous to the seizure, been reclaimed and taken back into his possession by the player nor been received to the exclusive possession and ownership of the winner or owner of the gambling device. Consequently, neither the player, winner or owner of such gambling device can make claim thereto.

No doubt every charitable association needs all the funds it can legitimately procure. Counsel has not informed us, and we have been unable to otherwise ascertain any method whereby the court may select a specified charitable organization and direct the funds now in legal custody to be paid over to such designated charity.

In Rosen v. Superintendent of Police Le Strange et al., 120 Pa. Superior Ct. 59, President Judge Keller, while discussing the subject, "seizure of money with gambling instrumentalities", said:

"Money is not, ordinarily, itself, an instrumentality of gambling. It may be, as when men gamble on the toss of a coin. But usually it is the stake or profit of gambling, not an instrumentality, device or apparatus for gambling. Cards, dice, roulette wheels, slot machines, punch boards, certain kinds of boards or tables, lottery tickets, policy slips, 'numbers' books and slips are among the common forms of gambling devices and apparatus.

"Money may, nevertheless, be subject to seizure, along with *contraband* gambling devices, apparatus or instrumentalities, (Com. v. Sinn, 82 Pa. Superior Ct. 482, 484; Com. v. Kaiser, 80 Pa. Superior Ct. 26, 28) when the circumstances are such that it is clearly apparent that it formed an integral part of the illegal gambling operation and, being commingled with other such money, had not, previous to the seizure, been

reclaimed and taken back into his own possession by the player, nor been received and reduced to the exclusive possession and ownership of the winner, or owner of the gambling device, or proprietor of the gambling establishment. Thus money found in a gambling slot machine, when seized, may be held with the machine and be confiscated by the Commonwealth; for while it had passed out of the ownership of the players, who inserted it in the machine, it had not been reduced to the possession and ownership of the proprietor; he does not become the owner of the money while it is contained in a receptacle within the illegal and contraband gambling machine. So money found lying on a roulette wheel, or rouge et noir table, when the gambling device is seized, if so commingled that its prior ownership has been lost, may, in like manner, be subject to confiscation: Com. v. Sinn, supra, p. 484. Money received for lottery tickets and 'policy' slips and from playing 'numbers,' and held awaiting the drawing of the lottery, or the determination of the winning number, if earmarked or segregated so as to be identified as part of the gambling operation, may likewise be confiscated as contraband by the authorities along with the gambling instrumentality: Appeal of Joe Curcio, 106 Pa. Superior Ct. 53, 161 A. 627."

What was there said by Judge Keller has been confirmed in recent opinions of the Superior Court. See Fairmount Engine Co. v. Montgomery County, 135 Pa. Superior Ct. 367. In the recent case of Commonwealth v. Petrillo, 158 Pa. Superior Ct. 354 opinion by Judge Dithrich, filed January 18, 1946, the Superior Court reaffirmed what was said by Judge Keller in Rosen v. Le Strange, supra, and determined that the judge of the court below was warranted in ordering the money seized to be forfeited.

The facts are undisputed that the money found in the slot machines was used in gambling and formed an integral part of such machines; it was so commingled that its prior ownership had been lost. The nature of the machines in which said money was found was shown to be such as fits them solely for unlawful purposes. Consequently, said machines became, in the language of the law, "outlaws". Moreover, such machines being incapable of lawful use, the owner and/or possessor has no standing to assert any property rights in them and the money contained therein may be subject to confiscation. Under the facts, the only place the court can direct that such confiscated funds, which we understand in all of the slot machine cases will aggregate approximately $3,500, shall be paid to and for the use of Jefferson County.

We, therefore, make the following

### Order

And now, May 10, 1946, after hearing the parties, the court, being satisfied that such devices and machines were employed and used solely for the purpose of unlawful gaming, as aforesaid, hereby adjudges the same forfeited and orders them, the aforesaid slot machines and all other equipment connected therewith, as fully as described in said return and petition, except the money contained in said machines, to be publicly destroyed.

The sheriff shall remove from each and every machine now in his possession all moneys contained therein and after the money has thus been removed he shall, with the assistance of the district attorney and the State police, transport all said slot machines and all other equipment connected therewith, described in said petition and return, except the money, as aforesaid, to the State Highway premises on East Main Street, Brookville, Pa., opposite the Dixie Diner and

the Chevrolet Garage, where he, with the assistance of the district attorney and the State police, shall publicly demolish and permanently destroy each and every slot machine in his possession and also the parts and equipment connected therewith, except the money. The sheriff shall proceed with said public destruction on Friday, May 17, 1946, beginning at 8:30 a.m., Eastern Standard Time, and continue with said destruction until completed and not after the hour of 6 p.m., Eastern Standard Time, of said day. In the event all machines have not been destroyed on the first day he shall continue with said destruction from day to day thereafter, excluding Sunday, during the hours aforesaid for a period not exceeding 10 days. In the event the sheriff can procure the use of a crucible furnace or a furnace in a foundry or machine shop in Jefferson County, then he shall, toward the further destruction of said slot machines and equipment used in connection therewith, cause the remains of said destroyed equipment to be transported to said furnace and publicly melted.

Within five days after the completion of said duties the sheriff shall make report to the court setting forth the serial number of each and every slot machine received by him, each and every slot machine destroyed by him, the total moneys which constituted an integral part of said gambling devices and that all moneys were removed therefrom. All moneys which formed an integral part of said slot machines and devices are confiscated as contraband and the sheriff shall account to and pay over to the County of Jefferson all such moneys received by him.

All reasonable costs and charges connected with the seizing and destruction of the aforesaid gambling devices shall be paid by the owner and possessor of such devices and machines, to wit, respondent in the above-named case, as provided by law.