Connelly *v.* Weber, Appellant.

188

Argued October 1, 1956. Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (HIRT, J., absent).

*Randolph A. Warden,* Assistant District Attorney, with him *Bernard E. DiJoseph,* District Attorney, for appellant.

*Alexander Knight,* with him *Foulke, Knight & Porter,* for appellee.

OPINION BY WOODSIDE, J., November 13, 1956:

This is an appeal from an order of the Court of Common Pleas of Montgomery County directing the

district attorney to return to Robert F. Connelly certain moneys seized during a gambling raid.

At the time of the raid Connelly and John Bolger were operating a crap game. When the raiding officers entered the establishment, Connelly scooped up in his hands $1169 which was on the table on which the crap game was being operated. One of the officers by grabbing Connelly's hand prevented his putting this money into his pocket. There remained upon the table $11.50. When Connelly was searched by the officers, $100 was found in one pocket, together with a check for $147 endorsed in blank by one Arthur Bruno, who had apparently been a player. In another pocket was found $357, and in still another, $752. When Bolger was searched the officers found the sum of $375 in his inside coat pocket.

The Commonwealth contended that all the money found, either upon the table or in the pockets of Connelly and Bolger, was contraband. The court below, upon petition of Connelly and Bolger for the return of all of the money to them except the $11.50, held that the money taken from the table and from Connelly's hand should be forfeited to the Commonwealth, but that the remaining money taken from the pockets of Connelly and Bolger should be returned to them. The district attorney returned the money to Bolger but appealed to this Court the order to return to Connelly the money and check found in his pockets.

Money is subject to seizure when it appears that it formed an integral part of the illegal gambling operation, and had not previous to the seizure been reclaimed and taken back into the exclusive possession of the player nor been received and reduced to the exclusive possession and ownership of the winner. *Rosen v. Supt. of Police Le Strange,* 120 Pa. Superior Ct. 59, 181 A. 797 (1935).

Whether the money formed an integral part of the illegal gambling operation is a question of fact to be determined by the fact finder. *Com. v. Petrillo,* 158 Pa. Superior Ct. 354, 45 A. 2d 404 (1946) ; *Urban's Appeal,* 148 Pa. Superior Ct. 101, 113, 24 A. 2d 756 (1942).

In support of its position that the money found in Connelly's pocket was an integral part of the gambling operation the Commonwealth relies upon the cases of *Com. v. Petrillo,* supra; *Fairmount Engine Co. v. Montgomery County,* 135 Pa. Superior Ct. 367, 5 A. 2d 419 (1939) ; and *Appeal of Curcio,* 106 Pa. Superior Ct. 53, 161 A. 627 (1932).

In the *Petrillo* case the court found that the money in question was bet on horse races and was being held awaiting the results of the races and the determination of the winners, and in the latter two cases the court found that the money was a part of an illegal lottery, the winners of which had not yet been determined. Under the circumstances in these cases the money had not been reduced to the "exclusive possession and ownership" of either the winner or proprietor of the gambling establishment.

In the present case the court held that the money taken from Connelly's pocket was not an integral part of the illegal gambling operation, but that the money on the table and that in Connelly's hand, which he had scooped up from the table, was an integral part of the illegal gambling operation. The evidence supports this conclusion on the part of the lower court.

Order affirmed.

---

DISSENTING OPINION BY ERVIN, J.:

This was a gambling establishment set up for the playing of dice or "craps" for money. It was conducted

jointly by three persons, namely, Robert F. Connelly, Joseph Sergio and John Bolger. Each man had a separate task and each depended on the others in the joint enterprise. Connelly was the only person supplying the monies and was the "operator" of the game. The monies found in his pockets undoubtedly were monies held on hand for use in the game. In the lower court's opinion it is stated: "When Connelly was searched $100 was found in one pocket, together with a check for $147.00, endorsed in blank by one Arthur Bruno, who had apparently been a player. In Connelly's pants pocket was found $357, and in another pants pocket $752." The stakes that day were large and the amount on the table at the time of the raid totalled $1,180.50. The reserve for the game needed by the house was also large.

It is difficult for the writer of this opinion to believe that Connelly was simply carrying this money on his person for personal use. It is reasonable to suppose that the defendant Connelly had cashed Arthur Bruno's check and that Arthur Bruno was using the cash in this game. It is also a reasonable conclusion that Connelly would have cashed the check of any other participant in the game if requested to do so. The money which he had in his pockets was available and actually used for a reserve account to be drawn upon by the house as needed in the game. The defendant Connelly was actually at the table where the game was being conducted and was the operator. Ordinary people do not carry such sums of money in so many pockets. This money was at the table for use in the game if and when needed. I do not believe that the money had been reduced to exclusive possession and ownership by Connelly.

Our courts have been too zealous to protect the tainted money of professional gamblers. It is high time

we reverse this trend and when one of these individuals is caught in the toils of the law he should be made to pay dearly in order to offset in some small degree the huge sums of money that the public is obliged to expend in order to catch, try, convict and incarcerate such person.

It seems to me that it would be a fair limitation of the present rule to require the forfeiture of all monies on the person of the operator of an illegal gambling operation present at such operation.

I would reverse and direct the lower court to forfeit all of the monies found on the person of the defendant Connelly.