STATE OF DELAWARE v. JOHN FOSSETT and DOMINICK DIBENE-DETTO.

(*July* 19, 1957.)

HERRMANN, J., sitting.

*Wilfred J. Smith, Jr.,* Deputy Attorney-General, for the State.

*William E. Taylor, Jr.,* for the defendant, John Fossett.

Superior Court for New Castle County, Nos. 49 and 50, Cr. A., 1956.

HERRMANN, J.:

I am called upon to decide (1) whether money validly seized in a gambling case may be forfeited to the State under our Statute and, if so, (2) whether due process of law requires trial by jury in such forfeiture proceeding.

The Statute here involved is 11 *Del. C.* § 2311(a) which provides:

"§ 2311.  *Disposition of property validly seized*

"(a) The following disposition shall be made of any papers, articles or things validly seized—

"(1) If the papers, articles or things were obtained as the result of the commission of a crime, they shall be returned to their lawful owners.

"(2) If the papers, articles or things were allegedly used in the commission of a crime, they shall be returned to the person from whom seized if such person is not thereafter duly convicted of the alleged crime; but if such person is duly convicted of the alleged crime, the papers, articles and things shall be disposed of as the Court directs.

"(3) If possession of the papers, articles or things seized is unlawful, they shall, upon petition, be disposed of as any Judge of the Superior Court directs."

The following facts are agreed:

Pursuant to a search warrant issued by this Court, the State Police raided the Newark Billiard Academy and conducted a search of the premises at about 1:30 o'clock on the afternoon of Friday the 13th of January, 1956. The establishment was owned by the defendant John Fossett and, at the time of the raid, it was being operated by his employee, the defendant

Dominick DiBenedetto. The police found DiBenedetto sitting at a desk on which there were "run-down sheets" used for recording bets on horse races. On a nearby table were "Armstrong sheets", newspapers and other papers. In addition to the desk and table, the room was furnished with a filing cabinet-strong box, two floor model radios, a portable radio, several telephones, chairs and an air conditioner. The officers found money in the amount of $580 in the desk and the sum of $111.99, consisting of coins and a five dollar bill, in the strong box. In compliance with instructions of the police, DiBenedetto produced the contents of his pocket, consisting of $604 in cash and $475.85 in Chrysler Corporation pay checks.

Of the money on DiBenedetto's person, it has been agreed that $115 belonged to him personally and exclusively, not being connected with any gambling activity. That sum has been returned to him under a Stipulated Order. It has also been conceded that the $111.99, taken from the strong box, was part of a coin collection kept by Fossett. As to the rest of the money and checks, DiBenedetto stated to police at the time of the raid that it was "part of the business". It appears that Fossett cashed pay checks as an accommodation to employees of the nearby Chrysler Corporation.

The police seized all of the property, money and checks and arrested the defendants. Upon the return of the search warrant, the Court authorized the State to retain, for prosecution purposes, all of the items taken under the search warrant except the money and checks taken from the person of DiBenedetto. The State retained custody of the latter, however, on the theory that seizure was made incidental to a lawful arrest.

Fossett was charged in this Court with the illegal taking of bets on horse races, the keeping of books and records for that purpose and conspiracy to commit those offenses. He pleaded guilty and was sentenced to pay a fine of $1,000. He was also given a one-year suspended prison sentence and he was placed on probation for five years.

Upon similar charges in this Court, DiBenedetto pleaded guilty and was sentenced to pay a fine of $500. He was also given a suspended prison sentence of six months and he was placed on probation for three years.

Thereafter, the State moved to forfeit all of the property and money seized in the raid and the defendant Fossett moved for the return thereof. The State does not now press its motion as to the air conditioner, filing cabinet, desk, table and chairs. It appears that the defendant concedes that the run-down sheets and racing forms may be condemned and destroyed as papers "used in the commission of a crime", within the meaning of 11 *Del. C.* § 2311(a). Similarly, it appears that the State concedes that the defendant's coin collection of $111.99 was not "used in the commission of a crime" and, therefore, is not subject to forfeiture under this Statute. An Order will be entered implementing these concessions.

This leaves in controversy the balance of the currency and checks in the amount of $1,544.85 taken from the desk and the person of DiBenedetto.

The defendant contends that money is not subject to confiscation under 11 *Del. C.* § 2311(a) which does not expressly mention money and which refers only to "papers, articles or things" as being subject to disposition by the Court.

I find this construction of the Statute to be too strict. While the Legislature did not expressly include money in its enumeration of forfeitable items, nevertheless, it is clear that the statutory language is broad and comprehensive enough to include money within the categories of "articles or things" that might be confiscated if "used in the commission of a crime". There is nothing in the Statute to militate against such construction of the statutory language and I consider it to be a rational interpretation consistent with the manifest purpose of the Act.

Pennsylvania has a Statute (18 *Purdon's Pa. Stat.* § 1445) authorizing forfeiture of any "device" or "machine" used for the purpose of "unlawful gambling". The word "money" like-

wise does not appear in the Pennsylvania Statute. In the leading case of *Rosen v. Superintendent of Police,* 120 *Pa. Super.* 59, 181 *A.* 797, 798, in which money had been taken from the pocket of one charged with maintaining a gambling house, it was held that money is subject to seizure, along with contraband gambling devices,

" \* \* \* when the circumstances are such that it is clearly apparent that it formed an integral part of the illegal gambling operation, and, being commingled with other such money, had not, previous to the seizure, been reclaimed and taken back into his own possession by the player, nor been received and reduced to the exclusive possession and ownership of the winner, or owner of the gambling device, or proprietor of the gambling establishment. \* \* \*. Money received for lottery tickets and 'policy' slips and from playing 'numbers,' and held awaiting the drawing of the lottery, or the determination of the winning number, if earmarked or segregated so as to be identified as part of the gambling operation, may likewise be confiscated as contraband by the authorities along with the gambling instrumentality. \* \* \*."

This rule has been applied specifically in cases, like the instant case, where money was seized in a raid on a "bookmaking" establishment or taken from the person of the operator or proprietor thereof. It has been held in such cases that money in the possession of a bookmaker, while awaiting the results of races and the determination of winners, formed an integral part of the gambling operation so as to be subject to confiscation. See *Commonwealth v. Petrillo,* 158 *Pa. Super.* 354, 45 *A.* 2d 404; *Commonwealth v. Friedken,* 158 *Pa. Super.* 357, 45 *A.* 2d 403; *Commonwealth v. Deavenport,* 158 *Pa. Super.* 359, 45 *A.* 2d 405. On the other hand, it has been held that such money may not be confiscated if it cannot be identified as gambling stakes or if it cannot be segregated from the gambler's own money obtained from lawful sources. See *Rosen v. Superintendent of Police,* 120 *Pa. Super.* 59, 181 *A.* 797; compare *Commonwealth v. Blythe,* 178 *Pa. Super.* 575, 115 *A.* 2d 906, in which cash in the aprons of

the operators of a bingo game, money on hand for making change and prizes on display were declared forfeitable as an integral part of an illegal gambling operation.

Substantially the same situation prevails in New Jersey where it has been held that money taken from a bookmaker, consisting of bets received on horse races, may be forfeited as a gambling device if "earmarked and segregated as part of a gambling operation." See *Kenny v. Wachenfeld*, 184 *A*. 737, 14 *N. J. Misc.* 322. Very recently, the Supreme Court of New Jersey confirmed the proposition that money is contraband and subject to seizure as a gambling device when it constitutes "an integral part of a gambling operation" or when it is "earmarked or segregated for gambling purposes." *Pratico v. Rhodes*, 17 *N. J.* 328, 111 *A*. 2d 399, 401. See also *State v. Link*, 14 *N. J.* 446, 102 *A*. 2d 609; *Krug v. Board of Chosen Freeholders*, 3 *N. J. Super*. 22, 65 *A*. 2d 542. In the latter case, the concurring opinion refers to the somewhat troublesome question of the "double penalty" that may seem to result from confiscation of the money of a convicted gambler who has already been subjected to a sentence of fine or imprisonment or both. This argument, which was presented in the instant case, was given as a reason for rejecting the rule of *Kenny v. Wachenfeld, supra*. I have considered this contention and, like the New Jersey Courts which continue to follow the *Kenny* case, I find it inadequate to overcome the force and effect of our Statutes which have for their purpose the utter discouragement of illegal gamblers and the absolute obliteration of illegal gambling.[1]

There is no uniformity among the authorities on this question because the cases involve statutes of varying types and kinds. See *Annotation* 19 *A. L. R.* 2d 1228, 1236. No useful purpose would be served by a review of such cases.

---

[1] It is noteworthy that New Jersey has, by Statute, *N. J. S. A.* 2A:152-7, aided law enforcement agencies by creating a *prima facie* presumption that money seized in connection with an arrest for violation of any gambling law is contraband of law as a gambling device or as part of the gambling operation. This presumption is rebuttable. See *Pratico v. Rhodes*, 17 *N. J.* 328, 111 *A*. 2d 399.

I find reasonable and practical the tests which were adopted in *Rosen v. Superintendent of Police, supra,* and which have been since followed in Pennsylvania, New Jersey and other jurisdictions. See *Gilley v. Commonwealth,* 312 *Ky.* 584, 229 *S. W.* 2d 60, 19 *A. L. R.* 2d 1224; compare *State v. Verrilli,* 132 *Conn.* 46, 42 *A.* 2d. 338.

■ Accordingly, it is held that the money seized in the instant case may be confiscated under 11 *Del. C.* § 2311(a), as an article used in the commission of a crime, if, at the time of the seizure, the money formed an integral part of the gambling operation or if it was then earmarked or segregated for gambling purposes.

■ The State has the burden of meeting the above test in order to obtain a judgment of forfeiture. The *quantum* of proof is not proof beyond a reasonable doubt, however; it is proof to the reasonable satisfaction of the trier of fact by a preponderance of the evidence. See *Urban's Appeal,* 148 *Pa. Super.* 101, 24 *A.* 2d 756, 762; *Commonwealth v. Petrillo,* 158 *Pa. Super.* 354, 45 *A.* 2d 404.

■ In this case, therefore, we have for determination the factual issue of whether, at the time of the seizure, the money was an integral part of the gambling operation or had been earmarked or segregated for gambling purposes. The defendant contends that he is entitled to trial by jury of factual issues in a proceeding of this kind. I agree.

■ Where, as here, a forfeiture is sought of property ordinarily used for lawful purposes, due process requires that the party asserting ownership be granted trial by jury of the issue of whether the property was being used for an unlawful purpose at the time of the seizure. It appears that this was the rule of the common law. See *People v. One* 1941 *Chevrolet Coupe,* 37 *Cal.* 2d 283, 231 *P.* 2d 832; *State v. Rose,* 3 *W. W. Harr.* 168, 132 *A.* 864, 869, 45 *A. L. R.* 85.

Under the Delaware Constitution, the defendant is guaranteed the right of trial by jury "as heretofore". Art. I, § 4, *Del. C.*

*Ann.* By virtue of this guaranty, the common law right of jury trial of the factual issue in this proceeding must be preserved to the defendant.

The defendant contends that 11 *Del. C.* § 2311(a) (2) must be declared unconstitutional because it expressly denies the aforementioned right to trial by jury. It is clear, I think, that there is no such denial of jury trial, expressed or implied. The Statute is silent as to the nature of the trial of any factual issue that may be involved in a proceeding thereunder. Such silence, however, does not imply deprivation of the right of trial by jury. Every pertinent Statute must be read in the light of the constitutional guaranty of jury trial "as heretofore" and must be found consistent therewith if reasonably possible.

I think it reasonable to conclude that by granting the power to dispose of seized property "as the Court directs", the Legislature intended to vest in the Court the power to pass "sentence" upon the offending property, after determination of any legal or factual issue in the proper way, rather than the power to try such factual issue without a jury contrary to the common law and the Constitution.

It is held, therefore, that 11 *Del. C.* § 2311(a)' (2) is not unconstitutional for violation of Art. I, § 4 of the *Delaware Constitution.*

I have given due consideration to the defendant's argument that a fair trial by jury is no longer possible because his version of the matter and his theory of the case have been heretofore disclosed to the State in these proceedings. I find this argument to be untenable.

The State contends that the defendant waived any right of trial by jury he may have had because he voluntarily entered into a hearing in this proceeding. By Criminal Rule 23 (a) of this Court, *Del. C. Ann.,* it is provided that "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and

the consent of the State." Since the defendant has not waived jury trial in writing, his right of trial by jury will be preserved to him.

An Order may be submitted, on notice, framing the issue to be presented to the jury.