[Civ. No. 19527. First Dist., Div. Two. June 19, 1961.]

WILLIE LEE, Appellant, v. CITY OF OAKLAND, Respondent.

Raymond D. Louie for Appellant.

Hilton J. Melby, City Attorney, George M. Cahalan and Fred M. Cunningham, Deputy City Attorneys, for Respondent.

McCABE, J. pro tem.*—By his complaint setting forth a common count for money had and received, plaintiff seeks to recover $3,707.67. He recovered judgment in the sum of $838.67. From this judgment, plaintiff appeals.

For some period of time prior to April 19, 1958, the Oakland Police Department, suspecting gambling activities, had kept watch over the premises of the Ying On Association. On April 19, 1958, and using a search warrant, the police department raided the premises. The association premises consisted of several rooms including a gambling room, a reading or TV room, a storage room and kitchen. A safe was kept in the storage room but no sleeping accommodations were present in this room. Yen Lau Lung was on the date of the raid, and had been, a cook and caretaker for the association for about two years. At the time of the entrance onto the premises by the policemen, there were 26 men in the reading or TV room and 14 in the gambling room. No gambling was seen by any of the police officers but there was gambling paraphernalia present. From Lung, the police officers took money. The amount of $838.67 was found in his wallet along with some chips. Other money, in rolls, amounting to $2,869 was found in other pockets of Lung's clothing. These monies were placed in separate envelopes indentifiable as to their source. Receipts for these monies were given to Lung by the police officers. Some time just prior to the raid a Chinese undercover man was given marked money. Later, and at the police station, eight dollars of the marked money was found among the $2,869. Although requested to do so, the defendant city

---

*Assigned by Chairman of Judicial Council.

has refused to return the money to Lung. Lung, in writing, assigned his claim to plaintiff who brought the present action.

The answer of the defendant city denies the allegations of the complaint.

The trial court found (1) Lung had been arrested and charged with gambling; (2) gambling was being conducted on the premises at the time of the raid and Lung was participating therein; (3) the money was taken from Lung; (4) defendant had a right to take and retain the money except the sum of $838.67; (5) defendant claims no title by a legal forfeiture; (6) $2,869 taken from the person of Lung was being used in a gambling game; (7) $838.67 taken from Lung was not in use in a gambling game; (8) Lung's claim was assigned to plaintiff; (9) although demand has been made for the return of the money, defendant refuses to return it.

Plaintiff contends the pretrial order so restricted the issues that no evidence could be received as to the possible illegal transactions and gambling. A reasonable interpretation of the issues outlined in the pretrial order would allow for such evidence, if present, to be admitted. Evidence of illegality may be introduced at any time (*Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141 [308 P.2d 713]).

It is the position of defendant city that it is not claiming title by forfeiture or that there was a forfeiture of any money. Defendant city asserts that the money claimed by plaintiff as assignee, was a part of the gambling which took place on the night of the raid and as such plaintiff's assignor could not and plaintiff cannot come into court to recover the money since it was at the time of its seizure in use in gambling games or was an integral part of the gambling. Defendant relies upon the rule announced in *Lee On* v. *Long,* 37 Cal.2d 499 [234 P.2d 9]. Also, defendant city relies upon the rule that where there is conflict in the evidence and there is substantial evidence to sustain the findings of the trial court, the appellate court will not disturb the findings (*Key* v. *McCabe,* 54 Cal.2d 736 [356 P.2d 169]).

Defendant city seems to arrive at its position that Lung participated in the gambling because (1) he was present when gambling was in progress; (2) marked money was found on his person; (3) chips were found in his wallet.

In *Lee On* v. *Long, supra,* at 501 [37 Cal.2d], the facts were: "In August, 1945, plaintiffs were arrested in a gambling raid made on certain premises in El Cerrito. Thereafter plaintiffs were charged with the violation of section 330 of the Penal

Code (gaming); and upon arraignment, they pleaded guilty to the charges and paid the fines imposed.

"In the course of the raid, the sheriff and his deputies seized from the tables at which plaintiffs were seated certain dice, dominoes, playing cards, lottery tickets, and money in the amount of $6,248.35."

There is no evidence that Lung was arrested for, or was found guilty of, or entered a plea of guilty, to any criminal statute or ordinance wherein a violation of gaming was charged. The testimony given is that Lung was arrested and that the money ". . . was put into the Police Property Clerk's office . . ." after the criminal proceedings were concluded. In the Lee On case, *supra*, defendants were charged with a violation of section 330 of the Penal Code (gaming) and later entered a plea of guilty and paid a fine. Also, in the Lee On case, the plaintiffs were seated at a table on which were dice, dominoes, playing cards, lottery tickets, and the money which plaintiffs later sought to recover in the civil action.

Contrary to the facts of the Lee On case, the officers entering the association premises did not see any actual gambling, did not *see* any money on the table or on the person of Lung. Upon being forced to do so by the officers, Lung produced his wallet which contained money and chips and money from other pockets of his clothing.

There was testimony from a police officer that just prior to the raid, marked money was given to a Chinese undercover man with instructions to enter a gambling game on the association premises. Although the same officer testified that the undercover man did so, it is conclusion on the part of the officer since he was not present and did not see gambling in progress nor see the undercover man from the time the money was given to him to the later time when the undercover man gave the police officers access through the door of the association premises. Later, some of the marked money was found in the possession of Lung. The undercover man did not testify nor did anyone else testify as to the route the marked money took before ending up in a roll in Lung's pockets.

From these facts it cannot be concluded that (1) the marked money was put into a gambling game; (2) Lung participated in the game; (3) Lung received the money through the gambling game; (4) Lung took time after so receiving it to roll it and place it in various pockets of his clothing; (5) Lung stood up and away from the table prior to the officers being present. Certainly the mere possession of marked money could

not force a conclusion that Lung took part in the gambling game, if in fact one was being played nor would there be any evidence from which a reasonable inference could be drawn.

There was evidence received by a written statement given by Lung to the police officers at the police station after the raid. The police officers testified that one of them asked the questions of Lung and he answered them and these were written by the officer and then Lung signed the statement. No interpreter was used during the taking of this statement, although at the trial, an interpreter was used during the entire time Lung was testifying. To explain this statement, Lung testified he does not speak or read English; that the officer asked him questions in English which he did not fully understand. The officer asked him if he could sign his name and upon an affirmative answer being received, requested Lung to sign the statement. One of the police officers testified he had known Lung for some time, had previously talked to Lung and apparently was understood and that Lung spoke in broken English.

In this statement, among other matters, Lung stated he was gambling on the night of April 19, 1958, and was banking the game. Neither of these statements even if true causes us to conclude that the money which was taken from Lung was an integral part of any gambling at the time the officers raided the premises. As previously stated, there is no evidence that gambling was in progress at the time of the raid. Considering the language difficulties which were present and the generality of the statement, it could have little evidentiary value upon which the findings of the court could be premised.

It is true as a matter of law that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out; nor can he set up a case in which he must necessarily disclose an illegal purpose as the ground work of his claim (*Lee On* v. *Long, supra*).

Plaintiff's assignor (Lung) did not have to disclose an illegal purpose to prove his claim. Lung had in his possession a large sum of money, it was taken from him, he made demand for its return. At this posture of the matter and on the trial of the action, defendant attempts to prove the money was part of an integral part of the gambling game.

The court must note that money as such is not a gambling device or an integral part of gambling paraphernalia. It may be the stake for which men gamble and may become an integral part of a gambling operation (*Krug* v. *Board of Chosen Freeholders,* 3 N. J. Super. 22 [65 A.2d 542]).

However, it may be reclaimed previous to seizure and reduced to the exclusive possession and ownership of a man (*Rosen* v. *Superintendent of Police,* 120 Pa. Super. 59 [181 A. 797]). It becomes clear that money may have been part of a gambling game but when reduced to the possession and ownership of a man, its link with gambling has been lost (*Connelly* v. *Weber,* 182 Pa. Super. 187 [126 A.2d 474]).

To carry defendant's position to its conclusion would lead to absurdity and injustice. It is true there must be a line beyond which it can be said money is not a part of gambling. But that line has been determined by the courts (see *Krug* v. *Board of Chosen Freeholders, supra;* *Rosen* v. *Superintendent of Police, supra;* *Connelly* v. *Weber, supra;* *Runco* v. *Di-Joseph,* 186 Pa. Super. 97 [142 A.2d 27]).

Defendant raised no objection to a finding that the money found in Lung's wallet wherein chips of the Pai Gow game were contained was not an integral part of gambling. Yet, it would seem that chips used in the Pai Gow game would be more, or at least equally, indicative of it being an integral part of the gambling game than the possession of marked money. The money in the wallet which contained chips was found by the court not to be an integral part of the gambling game but found the money of which some was marked was an integral part of the gambling game. This distinction evades us.

The trial court made findings (1) and (2) stated above. These findings cannot find substantial support in the evidence. Since the conclusions of law and judgment are predicated upon these findings, it follows the judgment must be reversed.

Plaintiff has waived any interest on the recovery; therefore it is not necessary for us to take up the matter.

The judgment is reversed with a direction to the trial court to enter judgment in favor of plaintiff in the sum of $3,707.67, without interest.

Draper, Acting P. J., and Shoemaker, J., concurred.