323 F.2d 211
 UNITED STATES of America
v.
$1,058.00 IN UNITED STATES CURRENCY, Nathan Granoff, Claimant, Appellant.
UNITED STATES of America
v.
$2,007.43 IN UNITED STATES CURRENCY and $440.10 in Checks and Money Orders, Meyer Sigal, Claimant, Appellant.
UNITED STATES of America
v.
$395.96 IN UNITED STATES CURRENCY and a $25.00 Check, Abe Rabinovitz, Claimant, Appellant.
 Nos. 14226-14228.
 United States Court of Appeals Third Circuit.
 Argued June 11, 1963.
 Decided October 7, 1963.
 
 Louis C. Glasso, Pittsburgh, Pa. (Michael J. Pugliese, Pittsburgh, Pa., on the brief), for appellants.
 Samuel J. Reich, Asst. U. S. Atty., Pittsburgh, Pa. (Gustave Diamond, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.
 Before KALODNER, HASTIE and SMITH, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 These appeals are from Orders of the District Court of the United States in three consolidated libel proceedings under Section 7302 of the Internal Revenue Code of 1954[1] for forfeiture of currency and checks, alleged to have been used in violation of the provisions of the internal revenue wagering tax laws.[2]
 
 
 2
 The District Court, following trial, found that the claimant Sigal was a principal, and the claimants Granoff and Rabinovitz were his assistants, in operating a segment of a large scale "numbers" operation in Pittsburgh, Pennsylvania; that none of the claimants had paid the special tax of $50 imposed by the revenue laws on persons engaged in receiving wagers and that they had not registered their place of business — Whitey's Luncheonette — as required by the revenue laws; that the evidence made out a prima facie case and that the currency and checks taken from the pockets of the claimants at the time of their arrest by Robert J. Madden, a special agent in the Intelligence Division of the Internal Revenue Service, "were guilty instrumentalities that had been used in an illegal numbers operation, i. e., wagers, and were intended to be so used therein,"[3] and as such were subject to forfeiture under § 7302.
 
 
 3
 The evidence discloses that an undercover surveillance of Whitey's Luncheonette — a combination restaurant and poolroom — was launched by the Internal Revenue Service on September 11, 1961, under the direction and supervision of Madden, for the purpose of obtaining information regarding suspected violation of the wagering tax laws by the claimants and others. Madden's men in the days following made wagers by purchasing "numbers" from various numbers writers in the vicinity of Whitey's and observed that these writers, and others known as writers and "pick-up men", entered Whitey's and gave money and checks along with packs of numbers slips to Sigal, Rabinovitz and Granoff who placed the money and checks in their pockets and the numbers slips in a bag, which was later shipped out.
 
 
 4
 On November 17, 1961 Madden obtained a warrant to search Whitey's for gambling paraphernalia and arrest warrants for the claimants. He served the warrants on November 20th and in the course of the arrests seized the currency and checks found in the pockets of the claimants. The search of the premises revealed six packs of numbers slips in an onion bin in the kitchen, one pack of numbers slips in a cuspidor and adding machine tapes were found in a phone booth.
 
 
 5
 On these appeals the claimants challenge only the District Court's holding that Madden was authorized to execute the arrest warrants. It is their contention that Madden did not have the power to execute the arrest warrants. They urge that as a special agent in the Intelligence Division of the Internal Revenue Service, he lacked statutory authority to execute the arrest warrants,[4] and for that reason the arrests and seizures were unlawful, and, accordingly, under our holding in United States v. Plymouth Coupe, 182 F.2d 180 (3 Cir., 1950) that property unlawfully seized cannot be forfeited, the orders of forfeiture should be reversed.
 
 
 6
 We deem it unnecessary to our disposition of these appeals to consider the issue with respect to whether or not Madden was authorized by law to execute the arrest warrants because we are of the opinion that contraband,[5] although unlawfully seized, may nevertheless be forfeited. Since we held to the contrary in United States v. Plymouth Coupe, supra, that decision is now overruled.
 
 
 7
 We are compelled to that result by the doctrine announced in United States v. One Ford Coupé, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926).
 
 
 8
 In the One Ford Coupe case an automobile, used to conceal and deposit illicitly distilled liquor in violation of internal revenue laws, was seized by a federal prohibition agent whose authority to make the seizure was challenged in a forfeiture proceeding.
 
 
 9
 In holding the automobile to be subject to forfeiture, Mr. Justice Brandeis, speaking for the Court, said (272 U.S. p. 325, 47 S.Ct. pp. 155-156, 71 L.Ed. 279):
 
 
 10
 "It is settled that where property declared by a federal statute to be forfeited because used in violation of federal law is seized by one having no authority to do so, the United States may adopt the seizure with the same effect as if it had originally been made by one duly authorized."
 
 
 11
 The doctrine of One Ford Coupe has been applied by the circuits in Interbartolo v. United States, 303 F.2d 34, 38 (1 Cir., 1962); United States v. Carey, 272 F.2d 492, 494-495 (5 Cir., 1959); United States v. One 1956 Ford Tudor Sedan, 253 F.2d 725, 727 (4 Cir., 1958); United States v. Pacific Finance Corp., 110 F.2d 732 (2 Cir., 1940); Bourke v. United States, 44 F.2d 371 (6 Cir., 1930).[6]
 
 
 12
 In United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951), and Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), where it was held that property illegally seized could not be used as evidence in a criminal proceeding, it was noted that such property could nevertheless be forfeited.
 
 
 13
 It was said in Jeffers, 342 U.S. at page 54, 72 S.Ct. at page 96, 96 L.Ed. 59:
 
 
 14
 "Since the evidence illegally seized was contraband the respondent was not entitled to have it returned to him. It being his property, for the purposes of the exclusionary rule, he was entitled on motion to have it suppressed as evidence on his trial." (emphasis supplied)
 
 
 15
 and in Trupiano 334 U.S. at page 710, 68 S.Ct. at pages 1234-1235, 92 L.Ed. 1663:
 
 
 16
 "It follows that it was error to refuse petitioners' motion to exclude and suppress the property which was improperly seized. But since this property was contraband, they have no right to have it returned to them." (emphasis supplied)
 
 
 17
 The sum of Jeffers and Trupiano is that the body of law relating to unlawful searches, arrests and seizures in criminal proceedings is without impact in a libel for forfeiture action which is an in rem proceeding.
 
 
 18
 As was succinctly stated in Grogan v. United States, 261 F.2d 86, at page 87 (5 Cir., 1958), cert. den. 359 U.S. 944, 79 S.Ct. 725, 3 L.Ed.2d 677:
 
 
 19
 "The seizure of property, the title to which has been forfeited by the United States, is to be distinguished from the exclusion of evidence secured through an unlawful search and seizure. In the one case the Government is entitled to the possession of the property, in the other it is not."
 
 
 20
 For the reasons stated the Orders of the District Court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 The section provides in relevant part as follows:
 "It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property." 26 U.S.C.A. § 7302.
 
 
 [2]
 Section 4411 of the Internal Revenue Code of 1954 imposes a special tax of $50 annually on any person engaged in receiving wagers; Section 4412 of the Code, requires such a person to register his place of business with the Internal Revenue Service; Section 4901 of the Code prohibits carrying on a wagering business without first having paid the special tax imposed by Section 4411, 26 U.S.C.A. §§ 4411, 4412, 4901
 
 
 [3]
 210 F.Supp. 45 at page 49 (W.D.Pa. 1962)
 
 
 [4]
 The Act of October 23, 1962, 76 Stat. 1143, 26 U.S.C.A. § 7608(b) granted specific authorization to agents of the Intelligence Division of the Internal Revenue Service "[to] execute and serve search warrants and arrest warrants", and "to make arrests without warrant for any offense against the United States relating to the internal revenue laws committed in his presence, or for any felony cognizable under such laws if he has reasonable grounds to believe that the person to be arrested has committed or is committing any such felony;" and "to make seizures of property subject to forfeiture under the internal revenue laws."
 
 
 [5]
 The finding of the District Court that the currency and checks seized in the raid of November 20th formed an integral part of a prohibited gambling operation is uncontested. The federal courts have held in interpreting § 7302 (see footnote 1, supra), that currency found to be an integral part of a gambling business, violative of § 4901, is subject to forfeiture. See United States v. Leveson, 262 F.2d 659 (5 Cir., 1959); United States v. One Thousand Five Hundred and Eight Dollars and Forty Cents, 158 F.Supp. 916 (S.D.Ill.1958); United States v. Currency in Total Amount of $2,223.40, 157 F.Supp. 300 (N.D.N.Y.1957). It may be observed that the Pennsylvania cases are in accord. Connelly v. Weber, 182 Pa.Super. 187, 126 A.2d 474 (1956); Rosen v. Superintendent of Police Le Strange, 120 Pa.Super. 59, 181 A. 797 (1935)
 
 
 [6]
 The cases cited are but a sampling, circuit by circuit, of many others to the same effect