326 F.2d 359
 64-1 USTC P 15,546
 UNITED STATES of America, Libellant-Appellee,
v.
FIVE THOUSAND SIX HUNDRED EIGHT DOLLARS AND THIRTY CENTS
($5,608.30) IN UNITED STATES COIN AND CURRENCY,
Respondent, and Rita Leader, Intervenor-Appellant.
 No. 14230.
 United States Court of Appeals Seventh Circuit.
 Jan. 7, 1964.
 
 Anna R. Lavin, Richard E. Gorman, Chicago, Ill., for appellant.
 Frank E. McDonald, U.S. Atty., Thomas W. James, Asst. U.S. Atty., Chicago, Ill., James P. O'Brien, U.S. Atty., for appellee; John Peter Lulinski, Asst. U.S. Atty., of counsel.
 Before DUFFY, KNOCH and CASTLE, Circuit Judges.
 DUFFY, Circuit Judge.
 
 
 1
 This is a libel action brought by the United States seeking the forfeiture to the United States of $5,608.30 in United States coin and currency.
 
 
 2
 Libellant alleges that on October 20, 1958, at 3000-3002 West Irving Park Boulevard, Chicago, Illinois, a bookmaking business was being operated without the owners, operators or conductors thereof having paid the special tax or having registered with the District Director of Internal Revenue.[1]
 
 
 3
 The libel alleged the monies seized had been used or were intended to be used in violation of the Internal Revenue Laws of the United States.
 
 
 4
 On June 8, 1959, the Intervenor-Claimant, Rita Leader, intervened with leave of court, filed a claim for respondent monies, and in her answer denied that the respondent monies had been used or were intended to be used as alleged in the libel.
 
 
 5
 Rita Leader is the proprietress of a liquor store and tavern located at 3000-3002 Irving Park Boulevard in Chicago, and had been such proprietress since 1941. She testified the monies seized were from proceeds from the liquor store and tavern over the preceding weekend, and from the proceeds of a loan from the Markow Currency Exchange made on the previous Friday and intended to be used in cashing customers' checks during the week.[2]
 
 
 6
 The tavern area is located on the eastern portion of the described premises. It is approximately sixty feet in length and forty-five feet in width with an oval bar against the east wall. From the tavern area, there is an open passageway that leads north to the back yard. In the passageway, there are two doors located on the west wall, leading to washrooms. There is one door in the east wall which opens into an office about eleven feet square. There is no other means of ingress or egress from this office. The liquor store is located at 3002 Irving Park Boulevard and is connected with the tavern area by an open archway near the south end of the two addresses.
 
 
 7
 On October 20, 1958, at about 3 p.m. Chicago Police Officers Roy Drolen and John Hastings entered the liquor store and walked through the archway into the tavern. They sat at the bar. Two seats to the left of Officer Drolen was an elderly lady who was engaged in a conversation with the bartender about 'horses running.' The woman said, 'I have a good one. I am going to play it $4 across the board.' The woman then walked from the bar to the rear of the tavern. She opened the door to the office and stepped inside.
 
 
 8
 Officer Drolen followed the woman at a distance of five or six feet. When she opened the door, Drolen observed two men seated at the desk inside. Each had before him a copy of the Chicago Turf Bulletin referred to in the testimony as 'Scratch Sheets.'[3] In addition to the scratch sheets in the possession of the two men at the desk, there was another similar scratch sheet posted on the south wall of the office.
 
 
 9
 In plain sight on the desk at which the two men were seated was $46 in currency. In the top center drawer of the desk was $1,329.80 in currency and cash lying loose. Also, five envelopes were found in the desk containing respectively, $750, $2,540, $180, $405 and $357.50. These envelopes had written notations thereon such as 'Johnson,' 'Paul, 2540,' 'arrow,' 'Norm 405' and 'Norm from J. Mack.'
 
 
 10
 After Officer Hastings and Sgt. Allman had entered the office, David Leader came into the room and identified himself as manager of the liquor store. Allman asked Leader what he was doing with an operation like that where he had so much money invested running a book. Allman testified that Leader replied, 'Well, it helps pay the rent.' Sgt. Allman also testified that in his opinion a handbook operation of October 20, 1958 was being conducted at 3000 West Irving Park Boulevard.
 
 
 11
 Before the trial, intervenor Leader moved that the property seized be returned to her on the ground that it was unlawfully seized against her will and without a search warrant. The motion asked that the cash and currency seized be suppressed as evidence 'in any proceedings.'
 
 
 12
 The principal argument of intervenor on this appeal is that the District Court erred in holding that a motion to suppress on the ground that evidence had been obtained in violation of the Fourth Amendment, would not lie in a civil case.
 
 
 13
 The following decisions hold that a motion to suppress is proper in a civil forfeiture action. Rogers v. United States, 1 Cir., 97 F.2d 691; United States v. Physic, 2 Cir., 175 F.2d 338; United States v. Butler, 10 Cir., 156 F.2d 897.
 
 
 14
 In United States v. One 1946 Plymouth Sedan Automobile, 7 Cir., 167 F.2d 3, the Government attempted to forfeit an automobile. There was a motion to suppress the alcohol found in the automobile because of an alleged illegal search and seizure. The District Court granted the motion to suppress, but this Court reversed because we held the search was not illegal. However, we did say, 167 F.2d at page 5, 'We have therefore to consider whether the search of the car and the seizure of the alcohol were illegal. If the search and seizure were illegal, the case should be affirmed; if they were not illegal, then this case must be reversed and remanded for further proceedings.'
 
 
 15
 In this Circuit district judges are divided on the question of whether a motion to suppress is proper in a civil forfeiture action. Two district judges have held that such a motion to suppress is proper. United States v. $4171.00 in United States Currency (D.C.N.D.Ill.), 200 F.Supp. 28 (Judge Campbell); United States v. One 1963 Cadillac Hardtop (D.C.E.D.Wis.), 220 F.Supp. 841 (Judge Grubb). In the instant case, Judge Robson held to the contrary.
 
 
 16
 It seems well established that even assuming property was seized illegally, yet the District Court had jurisdiction over the property in a forfeiture action. Dodge v. United States, 272 U.S. 530, 47 S.Ct. 191, 71 L.Ed. 392; Strong v. United States, 1 Cir., 46 F.2d 257; United States v. Eight Boxes, etc., 2 Cir., 105 F.2d 896; United States v. Pacific Finance Corporation, 2 Cir., 110 F.2d 732, and United States v. $1058.00 in United States Currency, 3 Cir., 323 F.2d 211.
 
 
 17
 In the instant case, the District Judge stated: 'If the Government is able to prove its allegations in this case, suppression would not be justified because forfeiture resulting instantaneously in violation of the Internal Revenue laws would have divested its user of the right to the property.'
 
 
 18
 We do not approve of the District Court's statement of the applicable rule of law. The learned District Judge necessarily did presume that the property had been forfeited before the Government proved that it was, in fact, forfeited. We think this is contrary to the holding of the Supreme Court in Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. In that case, the Court said at page 634 of 116 U.S., at page 534 of 6 S.Ct., 29 L.Ed. 746: 'The information, though technically a civil proceeding, is in substance and effect a criminal one. * * * As, therefore, suits for penalties and forfeitures incurred by the commission of offenses against the law, are of this quasi-criminal nature, we think that they are within the reason of criminal proceedings for all the purposes of the Fourth Amendment of the Constitution, and of that portion of the Fifth Amendment which declares that no person shall be compelled in any criminal case to be a witness against himself; and we are further of opinion that a compulsory production of the private books and papers of the owner of goods sought to be forfeited in such a suit is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution * * *.'
 
 
 19
 We hold that in view of the broad language of the Fourth Amendment coupled with the quasi-criminal nature of the forfeiture proceeding, the District Court should have considered and ruled upon the motion to suppress in this forfeiture proceeding.
 
 
 20
 The Government strongly emphasizes that the Federal Rules of Civil Procedure do not expressly provide for a motion to suppress as do the Federal Rules of Criminal Procedure. From this fact, the Government argues that the motion to suppress was clearly improper in the forfeiture proceeding. In spite of the failure to refer to a motion to suppress in the Civil Rules, we overrule this contention of the Government.
 
 
 21
 Seymour B. Bierman is, and at the time of the trial herein was, a special agent of the United States Internal Revenue Service. He had no personal knowledge of the facts in this case. Claimant Rita Leader caused a subpoena to be served upon Bierman. He appeared at the trial pursuant to the subpoena. The Government moved to quash the subpoena and the trial court granted such motion.
 
 
 22
 Claimant admits that she desired to have Bierman testify as an expert witness claiming that in another case, he testified upon behalf of the Government as to the sum of money a bookmaker would need in operating his business,
 
 
 23
 Claimant admits that it is beyond the power of a trial court to require a witness to educate himself but argues the Court does have the power to compel a witness to state an opinion already formed. No cases or authorities are cited for this novel approach.
 
 
 24
 We hold that it was entirely within the discretion of the trial judge as to whether an employee of the United States Government could be compelled to give expert testimony at the instance of an adverse party to the proceeding. Surely, in this case, there was no abuse of discretion.
 
 
 25
 The judgment below is reversed and remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Section 7302 of the Internal Revenue Code of 1954 provides in pertinent part: 'It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property.' 26 U.S.C.A. 7302
 Section 4411 of the Internal Revenue Code of 1954 imposes a special tax of $50 annually on any person engaged in receiving wagers; Section 4412 of the Code requires such person to register his place of business with the Internal Revenue Service; Section 4901 of the Code prohibits carrying on a wagering business without first having paid the special tax imposed by Section 4411.
 
 
 [2]
 Rita Leader testified that in the normal course of events, most of the $3000 cash loan would have been used to cash checks by Monday, October 20, 1958
 
 
 [3]
 Testimony disclosed that a scratch sheet is a record of horses running at the various tracks on a given date, and is often used by bettors in placing bets on horse races