# D'Angelo Estate *v.* Armor Company, Appellant.

Argued April 9, 1962. Before RHODES, P. J., ER-VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Marcus Aaron, II*, with him *Allen H. Berkman, Myles P. Berkman*, and *Glick, Berkman & Engel*, for appellant.

*Albert A. Fiok,* for appellee.

OPINION BY FLOOD, J., June 13, 1962:

The defendant appeals from an order of the County Court of Allegheny County, dismissing exceptions to a judgment in the sum of $850 entered for the plaintiff following trial without jury.

The action was in assumpsit, based upon the alleged negligence of the defendant, which installed a gas heater in the plaintiff's premises, in connecting the exhaust pipe from the heater to a chimney which was wholly or partially blocked. According to the plaintiff, exhaust fumes from the heater seeped through the blocked chimney and condensed on the walls and ceiling causing general dampness throughout the premises and consequent damage to the plaster, wallpaper and paint. While the defendant does not contest its obligation to test the chimney for draft before connecting the heater to it, it objects to the following findings which are implicit in the decision of the trial judge: (1) that exhaust fumes from the heater caused the dampness and consequent damage, (2) that the chimney was blocked when the defendant connected the gas heater to it, and (3) that $850 is the reasonable cost or expense of restoring the property to its former condition.

Specifically, the defendant contends that the first and third findings are not supported by legally competent evidence and that the second finding is against the weight of the evidence.

The credibility of the witnesses and the weight to be accorded their testimony were for the trial judge. *Rosine v. Gerlach,* 173 Pa. Superior Ct. 240, 98 A. 2d 436 (1953). The general finding of the trial judge for the plaintiff has the force and effect of a jury's verdict. *Ibid.* The argument that his decision is against the weight of the evidence was peculiarly for the court below, and this court will not reverse unless the lower

court abused its discretion in affirming his decision. *Robinson Electrical Co., Inc. v. Capitol Trucking Corporation,* 168 Pa. Superior Ct. 430, 79 A. 2d 123 (1951).

1. The following evidence, taken most favorably to the plaintiff, as it must be in view of the decision, amply supports the trial judge's finding that exhaust fumes from the heater caused the dampness and consequent damage. An expert testified that combustion in a gas heater produces a considerable quantity of water. This ordinarily passes through an open chimney in vapor form, but, if cooled below a certain temperature, it will condense to form water and combine with other products to produce acid capable of turning plaster into a porous spongy, ulcer-like mass and causing paint to deteriorate. The exterior of the plaintiff's four room house was newly painted shortly before the defendant installed the gas heater in the basement in March 1955. The chimney was an old one which had recently been built down from the first floor to the basement. Shortly after the heater was installed the interior rooms were repapered and repainted. After the heater was placed in operation, in October 1955, the walls and ceiling became damp "down in through the chimney line", the wallpaper and plaster became discolored, and the plaster assumed a "foam, crumbling look". These conditions spread and eventually the wallpaper in two rooms was completely ruined. By January or February 1956 the paint on an exterior wall of the dwelling began to peel off. The wood underneath the paint had a warped and discolored appearance. A repairman called by the owner noticed that the pointing on the chimney was "not so good", that the chimney was "sweating", and that the rooms were damp and wet. He tested the chimney for draft and found there was none. He then broke through the chimney at the first floor and found about four bushels of dirt or mortar in the chimney. After cleaning out the chimney he in-

serted a transit stack down the full length of the chimney to the cellar. This solved the dampness problem.

In the face of this evidence, the defendant insists that the chimney could not have been blocked because all witnesses testified that, if the chimney was completely blocked, the exhaust fumes, seeking the path of least resistance, would have come back down the flue and passed through an opening in the heating system called a diverter into the basement, thereby producing carbon deposits in the heater and on the diverter and filling the basement with poisonous fumes. This argument fails to take into account the obvious explanation that the mortar in the old part of the chimney was so disintegrated that the path of least resistance for the fumes was not through the diverter but through open spaces in the chimney itself and into the walls and ceilings. The presence in the chimney of four bushels of refuse, which one witness described as "dirt" and another as "mortar", was mute evidence from which the trial judge could have concluded, not only that the chimney was blocked, but also that the chimney had disintegrated to such an extent that its walls might easily have been the path of least resistance for the gas fumes. It is easy to believe that, if any doubt remained in his mind as to the cause of the dampness, it was dissipated by testimony that the problem was solved by the installation of a transit shaft through the chimney to the cellar, following the removal of the blocking debris.

2. The trial judge's finding that the chimney was blocked when the furnace was installed is attacked as being contrary to the weight of the evidence. The defendant does not contend that it is likely that four bushels of dirt or mortar accumulated in the chimney between March of 1955 and February of 1956. We believe it to be a reasonable inference in view of the nature and quantity of the debris, that all or most of it

accumulated prior to March 1955. The defendant argues, however, that any such inference is rebutted by the testimony of its installer and a city inspector to the effect that they checked the draft and combustion and found both to be in good order.

Mr. Dudley, the installer, testified that he checked the chimney for draft before making the connection by lighting a piece of paper and observing it being drawn up into the chimney. Despite his emphatic statement that he made this test, his testimony as a whole may well have led the trial judge to believe that he had no clear recollection of making this test, but assumed he made it because, as he said, he "always" made it "in all installations". Moreover he did not testify that he made the same test on his return visit in the fall. When asked whether he made any effort at that time to determine whether the furnace was drawing, he said only that he looked at the smoke pipe around the diverter and the burner and found them "nice and clean". From this the trial judge may have concluded, either that Dudley did not make any test before the installation or that he did not make the kind of test which should have been made to disclose blocking of the chimney.

Franklin Miller, a city inspector testified that he inspected the furnace on May 20, 1955, and that the flue was operating properly. He based this conclusion on a so-called cigar test in which the smoke from a cigar is pulled through the flue, thereby indicating that the flue is operating properly. He further stated that if the unburnt products of combustion did not pass through the flue, this would be indicated on the diverter of the furnace as being black. When he made his inspection, the diverter was clean. However, he admitted on cross-examination that it is possible for fumes and by-products of combustion to permeate the partition area between the outside wall and the inside

wall, without anything showing on the diverter, if "that happens to be the least course of resistance".

Mr. Miller testified that the furnace was in full operation when he made his inspection because it was "kind of cool at that time". However, the plaintiff's tenant testified that the furnace was not used at all until October, 1955. Miller's testimony on this point was discredited when the United States Department of Commerce Weather Bureau's weather report for Friday, May 20, 1955, was introduced showing the temperature for that day from eight o'clock to nine o'clock, A.M., as being 72 degrees and climbing up to 79 degrees up to five o'clock that afternoon.

Under the circumstances we cannot hold that the court en banc was guilty of an abuse of discretion in refusing to hold that the finding of the trial judge was contrary to the weight of the evidence.

3. The defendant contends that an estimate for plastering in the sum of $450, dated September 1957, nineteen months after the damage occurred, and an estimate for painting in the sum of $400, given by a painter who could not recall when he made the estimate, should not have been admitted, over its objection, under the rule of *Gaylord Builders, Inc. v. Richmond Metal Manufacturing Corp.,* 186 Pa. Superior Ct. 101, 140 A. 2d 358 (1958). There was no showing what these estimates would have been as of the date the damages were sustained.

The plaintiff had the burden of proving the cost of restoring the property to its former condition at prices which prevailed when the damages were sustained. See *Brourman v. Bova,* 198 Pa. Superior Ct. 279, 182 A. 2d 245 (1962). Since the trial occurred more than four years after the injury, we cannot properly assume, without evidence, that there were no variations in prices during the intervals or that any variations necessarily were de minimis. Under these circumstances

justice requires a new trial confined to the question of damages. See *Romesberg v. Caplan Iron and Steel Company*, 385 Pa. 36, 122 A. 2d 53 (1956).

Judgment reversed with a procedendo, confined to the question of damages.