Commonwealth, Appellant, *v.* Rok.

Argued April 13, 1964. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*W. Louis Coppersmith,* Assistant District Attorney, with him *Ferdinand F. Bionaz,* District Attorney, for Commonwealth, appellant.

*Vincent M. Casey,* with him *Arnold D. Smorto,* and *Margiotti & Casey,* and *Smorto & Creany,* for appellee.

OPINION BY ERVIN, J., June 11, 1964:

On May 9, 1963 John Rok was arrested in the Mission Inn, a tavern in the City of Johnstown. At the time of his arrest he was seated at a table in a booth and he had beside him on his chair and on the table numerous records of numbers plays, including two books containing listings of over 300 plays each. He also had in his possession treasury tickets on which payoffs would go as high as $5,000.00. He admitted that he paid the hits of winning numbers players and he paid small treasury ticket payoffs. He stated, however, he did not use his own personal money to make these payoffs. When asked whose money he did use, he invoked the privilege against self-incrimination and refused to answer. At the time of his arrest the sum of $3,007.00 was found in various amounts in various pockets; $16.00 in change was found in his left rear hip pocket; $2,426.00 was found in a brown paper bag in one of the pockets in his trousers; five separate rolls of bills with rubber bands around them were found in different pockets of his trousers and coat. These sums were $84.00, $108.00, $200.00, $61.00 and $112.00. There were no identifying marks on any of the rolls. The money was confiscated by the officers and charges of participating in lottery and bookmaking were brought against the appellant. On June 10, 1963 he plead guilty to these charges. Subsequently he filed a petition asking for the return of $2,726.00 of the confiscated money, claiming that amount as his own personal money and not used in the illegal gambling transactions. He admitted that $282.00 was used as an integral part of the gambling transactions. The court below ordered the return of the sum of $2,726.00 to the appellant and forfeited the sum of $282.00 to the county. From this order the Commonwealth appealed.

The leading case on this question is *Rosen v. Supt. of Police Le Strange,* 120 Pa. Superior Ct. 59, 61, 62, 63, 181 A. 797, wherein President Judge KELLER, for a unanimous court, stated: "Money is not, ordinarily, itself, an instrumentality of gambling. It may be, as when men gamble on the toss of a coin. But usually it is the stake or profit of gambling, not an instrumentality, device or apparatus for gambling. Cards, dice, roulette wheels, slot machines, punch boards, certain kinds of boards or tables, lottery tickets, policy slips, 'numbers' books and slips are among the common forms of gambling devices and apparatus.

"Money may, nevertheless, be subject to seizure, along with *contraband* gambling devices, apparatus or instrumentalities (Com. v. Sinn, 82 Pa. Superior Ct. 482, 484; Com. v. Kaiser, 80 Pa. Superior Ct. 26, 28) when the circumstances are such that it is clearly apparent that it formed an integral part of the illegal gambling operation and, being commingled with other such money, had not, previous to the seizure, been reclaimed and taken back into his own possession by the player, nor been received and reduced to the exclusive possession and ownership of the winner, or owner of the gambling device, or proprietor of the gambling establishment. Thus money found in a gambling slot machine, when seized, may be held with the machine and be confiscated by the Commonwealth; for while it had passed out of the ownership of the players, who inserted it in the machine, it had not been reduced to the possession and ownership of the proprietor; he does not become the owner of the money while it is contained in a receptacle within the illegal and contraband gambling machine. So money found lying on a roulette wheel, or rouge et noir table, when the gambling device is seized, if so commingled that its prior ownership has been lost, may, in like manner, be subject to confiscation, Com. v. Sinn, supra, p. 484. Money re-

ceived for lottery tickets and 'policy' slips and from playing 'numbers,' and held awaiting the drawing of the lottery, or the determination of the winning number, if earmarked or segregated so as to be identified as part of the gambling operation, may likewise be confiscated as contraband by the authorities along with the gambling instrumentality: Appeal of Joe Curcio, 106 Pa. Superior Ct. 53, 161 A. 627. That case illustrates the distinction above made. The money which had been received from the persons who played the 'numbers' game and was being sorted into packages, at the time the place was raided, was properly seized and retained by the police authorities, but other money found in the place, which had been received from the operation of Curcio's billiard tables, and was not identifiable with the illegal lottery was rightly ordered returned to him.

"The money in the case now under consideration was taken by the police from appellant's pocket. It was not found on any gambling table, wheel or other illegal device, machine or apparatus. It could not be earmarked or identified as a stake which was being gambled for, or be segregated from the appellant's own money obtained from legal sources. If any of it had been received from an illegal source, such as gambling, it had, for the purposes of this case, been so effectually reduced to appellant's exclusive possession prior to the seizure as to have lost its link or connection with any gambling operation."

In the case of *Connelly v. Weber,* 182 Pa. Superior Ct. 187, 190, 126 A. 2d 474, Judge WOODSIDE, for the majority, stated: "Whether the money formed an integral part of the illegal gambling operation is a question of fact to be determined by the fact finder. Com. v. Petrillo, 158 Pa. Superior Ct. 354, 45 A. 2d 404 (1946); Urban's Appeal, 148 Pa. Superior Ct. 101, 113, 24 A. 2d 756 (1942)." In that case the court below

found that the money taken from the pockets of the defendant was not an integral part of an illegal gambling operation but that the money on the table and in the defendant's hand, which he had scooped up from the table, was an integral part of the illegal gambling operation. The writer of this opinion dissented in that case and stated that "it would be a fair limitation of the present rule to require the forfeiture of all monies on the person of the operator of an illegal gambling operation present at such operation." The majority of the Court did not agree with this position and therefore it is not the law of Pennsylvania.

On an appeal in this kind of a case it is not our duty to weigh the evidence (*Irwin Borough Annexation Case (No. 1)*, 165 Pa. Superior Ct. 119, 67 A. 2d 757) or to pass upon the credibility of the witnesses and the weight to be accorded to their testimony (*D'Angelo Estate v. Armor Co.*, 198 Pa. Superior Ct. 283, 182 A. 2d 247). The findings of fact by the court below will not be disturbed by us if our examination of the testimony shows that they are supported by competent evidence (*Irwin Borough Annexation Case (No. 1)*, supra).

With these principles in mind, let us review the evidence introduced in the court below. The defendant, John Rok, testified that for some time prior to 1958 he was the sole owner of the Big Springs Hotel in Seward, Pennsylvania, and by an agreement dated December 3, 1958 he sold the hotel to one Suzanne Urban Barrett for a total consideration of $3,000.00. A portion of the purchase price was in the form of credit for rent either due to the purchaser or to the estate of Andrew R. Urban. The balance of $1,800.00 was secured by a promissory note, which note was offered in evidence. The installment payments on the note were not made in accordance with the agreement and Rok turned the matter over to an attorney for collection, at

which time there was a balance of $1,025.00 due. This amount was collected in the latter part of 1960 or the early part of 1961. Rok testified that he turned this amount, as well as other payments which he had received from the sale of the hotel, over to his brother, Andrew Rok. Sometime in 1962 Rok began discussions with a Nick Bondy concerning the possible purchase of the Capitol Bowling Alleys in Johnstown. In 1963 he again contacted the owner of the bowling alleys, who referred him to Mr. George Minno, a real estate agent. On April 14 the defendant received back from his brother the sum of $1,800.00, which he had held in safekeeping for him. On April 21, 1963 the defendant borrowed from Jim Chirillo the sum of $1,-000.00, which was evidenced by a note which was offered in evidence. At a meeting in the Elks Lodge in Johnstown with Mr. Minno and Mr. Bondy on April 25, Rok had on his person the two sums of money above referred to, totalling $2,800.00. From that time until the day of his arrest on May 9, approximately two weeks later, he had the same money in his possession. At the time of his arrest he had a brown paper bag in his right-hand pocket which contained $2,426.00, which he claimed as his own personal money, and he also had rolls of money which contained $300.00 of his own money. After he was arrested he was dropped as a possible partner in the purchase of the bowling alleys. Nick Bondy and George Minno corroborated Rok as to their part in the above mentioned transactions. Andrew Rok, the brother of defendant, also corroborated him and further testified that he returned to the defendant sums totalling $1,800.00 on Easter Sunday, April 14, 1963. James Chirillo corroborated Rok and testified that he lent defendant $1,-000.00 on April 21, 1963 and that this amount had not been repaid to him at the time of Rok's arrest. This loan was evidenced by a handmade note which was also introduced into evidence.

The only evidence to offset this, offered by the Commonwealth, was that of State Police Officer Arthur Olesky, who testified that Rok told him at the time of his arrest that the $2,426.00 in the brown paper bag was used to cash checks in the Mission Inn, but he did not say what the other money was used for.

The question of whether the sum of $2,726.00 was Rok's own money or whether it was an integral part of an illegal gambling operation at the time of Rok's arrest, was purely a question of fact for the determination of the court below. Not only was there adequate evidence to support the trial judge's findings but the weight of the evidence, in our opinion, inclined in favor of Rok. It is, therefore, our duty to affirm the order made by the court below.

Order affirmed.