## Brandywine Area Joint School Authority
## v. Van Cor, Inc.

*Milton Apfelbaum,* for plaintiff.

*MacElree, Platt & Harvey,* for defendants.

MARRONE, J., May 24, 1971.—Brandywine Area

Joint School Authority (Authority) brought suit against Van Cor, Inc. (Van Cor) for breach of a contract for construction of three school buildings and against its surety, Aetna Casualty & Surety Company (Aetna) for breach of contract under its bond for Van Cor's faithful performance of the construction contract. The case was tried before the court without a jury pursuant to the provisions of the Act of April 22, 1874, P. L. 109, sec. 1, 12 PS §688, and a stipulation of the parties filed of record that the trial judge return a general verdict only without the necessity of making special findings of fact.

Following lengthy trial, arguments of counsel and careful consideration and review of the voluminous record, as well as the able briefs of counsel, the trial judge filed his decision in which he made six findings, the import of which was a determination that Van Cor was liable for breach of its contract with Authority and that Aetna was liable as surety on the contract performance bond. Liability was found to be in the sum of $212,762.93. Van Cor and Aetna have filed exceptions to each of those findings and to three specific rulings on evidence made by the trial judge in the course of the trial. Argument on the exceptions having been heard, the matter is now before us for decision.

Findings by a trial judge sitting without a jury have the force and effect of a jury's verdict, and the party favored by those findings is entitled to have the evidence viewed in the light most favorable to him, and to have all conflicts in testimony resolved in his favor: Krobat v. Ganzak, 194 Pa. Superior Ct. 49; Colish v. Goldstein, 196 Pa. Superior Ct. 188; D'Angelo Estate v. Armor Co., 198 Pa. Superior Ct. 283. Accordingly, the record discloses and the credible evidence establishes the following facts.

Plaintiff, a corporation organized and existing under

the Municipality Authorities Act of 1945, and Van Cor, a Pennsylvania corporation, as prime contractor entered into a construction contract dated November 18, 1960, for the general construction of the Rainbow Elementary School, North Brandywine Elementary School and Hustonville Elementary School in accordance with contract documents including plans and specifications for a total contract price of $557,368. Aetna, a paid surety, with Van Cor as principal, executed and delivered a performance bond, pursuant to the contract provisions, for the faithful performance of the contract and undertaking to indemnify plaintiff from any expenses incurred should Van Cor fail to complete the work specified or from damages to plaintiff growing out of Van Cor's or its subcontractors' manner of performance, and further agreeing to remedy without cost to plaintiff all defects which might develop during a one-year period from the date of completion and acceptance of the work, which, in plaintiff's judgment, were caused by defective or inferior materials or workmanship. Construction of each of the three schools was begun in January 1961, and was substantially completed in early September 1961. During the construction, payments were made by the Authority to Van Cor in accordance with an agreed payment schedule, the final progress payment being made on or about October 6, 1961, and the final retention payment on May 31, 1962. Roof leaks began to appear almost immediately upon completion of the construction and were first brought to the attention of Van Cor by the Authority through its architect, Buchart Associates, in a letter of November 28, 1961, requesting that the leaks be corrected within 14 days. Subsequent notices from the Authority to Van Cor of December 20 and 21, 1961 resulted in attempts by Van Cor, through Atlas Roofing & Sheet Metal Company,

its roofing subcontractor, and the Flintcote Company, its roof bonding contractor, to correct the leaks. The various repairs made failed to correct the roof leaks for reasons that became more apparent in January 1963, when the Authority's architect inspected the three schools and reported to the Authority that, in addition to other specified defects and deficiencies involving the skylights and various roofing materials, fascia, coping and other flashings, they observed excessive deflection of the Flexicore roof slabs on which the built-up roof was applied at each of the three schools. At a meeting with the Authority on March 14, 1963, Van Cor was provided a copy of this report and was thereafter advised by the Authority on April 1, 1963, to replace all defective roofing, flashing and other roofing materials, including the Flexicore roof slabs where necessary and repair all damage done to the three schools as a result of water leakage. Certain repairs, not including the Flexicore roof slabs, were thereafter effected by George H. Duross, Inc., an independent roofing contractor, at Van Cor's expense. Notwithstanding those repairs, the roof leaks persisted until and after this action was brought.

We shall first consider defendants' three exceptions to the trial judge's rulings on evidence. The first goes to the ruling asserted to have been made on cross-examination of plaintiff's witness, Shields, that evidence as to design of the buildings was not admissible. In fact, no such ruling was made. The trial judge took that testimony subject to objection and reserved ruling upon its admissibility. We now hold that evidence to have been relevant and admissible. While the basic issue between the parties was that of faulty materials and faulty workmanship, and at the stage of the case while Shields was on the stand the issue of improper design was not strictly relevant, cross-examination

about faulty design, as against faulty materials or workmanship, was relevant at least as an attack on the witness's credibility. In addition, plaintiff later showed through its witness, Frank, that the design of the buildings was proper. Thus, on the whole record we cannot say that the questioned crossexamination of Shields was irrelevant or improper. Furthermore, if it would have been error to permit Shields to testify as to what Frank told him was his, Frank's, engineering opinion as to design, such error was harmless error in light of Frank's own testimony as to propriety of design when he was later called as plaintiff's witness.

The second and third exceptions to rulings on evidence go on the one hand to exclusion of the American Concrete Institute's Code, 6-1963, setting forth deflection in prestressed concrete slabs and on the other to exclusion of the testimony of defendants' expert, Caplan, with respect to provisions of the same 1963 code relating to specifications as to span lengths for precast concrete. The answer to those questions seems to us obvious. The Code of 1963 was promulgated and published more than two years after the contract documents were executed and the construction work was commenced. Such a code, not adopted by the institute until March 1963, or ratified by it until May 1963, is so clearly after the fact as to be wholly irrelevant. Whether earlier contracts, construction or design conformed to the 1963 Code provisions, adopted and published more than two years later in light of more recent studies and developments, had no relevancy whatever, those rulings were correct.

Van Cor and Aetna both except to the trial judge's finding that Van Cor failed to erect and install the roofs, roof structures and skylights on each of the three school buildings in a good and workmanlike manner and used defective materials in the erection and instal-

lation thereof. Without recounting in detail the testimony offered by the Authority in support of its averments in this regard, we think it adequate to observe that that testimony, which we credit, more than amply demonstrates that the Flexicore roof slabs comprising the roof deck at each of the three schools were defective in that they did not perform in accordance with their manufacturer's specifications, resulting in excessive deflection of those planks and consequent impairment of the built-up roof, and that there was obvious defective and unworkmanlike performance in the erection and installation of the roof deck, skylights and built-up roof alike. Accordingly we find no merit in this exception and it is overruled.

The record as a whole and the facts as we have herein set them forth compelled a finding that, in accordance with the terms of the contract documents, both Van Cor and Aetna were duly and timely notified of the defects in materials, workmanship and erection and installation of the roof, roof structures and skylights of each of the three school buildings and failed to repair and remedy those defects. Accordingly, their exception to the trial judge's finding in that regard is overruled without further comment.

With reference to the finding that Van Cor breached the terms of its guaranty and warranty under the contract documents, the trial judge had before him the following pertinent provisions of the construction contract and the performance bond, and of the supplement to general conditions of the contract, which are as follows:

"*Construction Contract*

"5. Representations of Contractor—The Contractor represents and warrants:

"(c) that such temporary and permanent work required by the contract documents as is to be done by

it can be satisfactorily constructed and used for the purposes for which it is intended and that such construction will not injure any person or damage any property; and

"(d) that it has carefully examined the plans, specifications and site of the work; and that from its own investigation, it has satisfied itself as to the nature and location of the work, the character, quality and quantity of surface and sub-surface materials likely to be encountered, the character of equipment and other facilities needed for performance of the work, the general and local conditions, and all other matters which may, in any way affect the work or its performance."

"Performance Bond

"Now, the condition of this obligation is such that if the Principal shall faithfully perform the Contract (including any alterations or additions thereto) at the time and in the manner therein provided, and shall indemnify and save harmless the Obligee from any expenses incurred through the Principal's failure to complete the work specified and for any damages growing out of the manner of performance of the Contract by the Principal and all sub-contractors and his or their servants, then this obligation for faithful performance to be void; but otherwise it shall remain in full force and effect.

"And if the Principal shall remedy without cost to the Owner any defects which may develop during a period of one year from the date of completion and acceptance of the work performed under said contract, provided, in the judgment of the Owner or its successor having jurisdiction in the premises, such defects are caused by defective or inferior materials or workmanship, then this obligation for maintenance shall be

void; but otherwise it shall remain in full force and effect."

"General Conditions of Contract

"Article 9

"Unless otherwise specified all materials shall be new and both workmanship and materials shall be of good quality. The contractor shall, if required, furnish satisfactory evidence as to the kind and quality of materials."

"Supplement to General Conditions

"These Supplements and Amendments to 'The A. I. A. General Conditions of the Contract for the Construction of Buildings' shall take precedence over and modify any articles and statements therein and shall be used in conjunction with them as a part of the 'Contract Documents'.

"Where any such article of General Conditions is amended, voided, or superseded thereby, provisions of such articles not so specifically amended, voided or superseded shall remain in effect."

"CORRECTION OF WORK AFTER FINAL PAYMENT

"Supplement to Article 20: Neither final certificates nor payment nor any provisions of Contract Documents shall relieve the Contractor of responsibility for faulty materials nor workmanship. He shall remedy any defects due thereto and pay for any damage to other work resulting therefrom which shall appear within a period of one year from date of final certificate of completion. Where guarantees are required by specifications for longer periods, such longer period shall apply."

"Guaranty-Warranty

"(1) In case of work performed by subcontractors and where guarantees are required, secure warranties from said subcontractors addressed to and in favor

of Owner; deliver copies of same to Architect upon completion of work.

"(2) Delivery of said guarantees shall not relieve Contractor from any obligation assumed under any other provision of Contract.

"(3) Should any defects develop in aforesaid work, within specified periods, due to faults in materials and/ or workmanship, make repairs; do necessary work to correct defective work. Execute such repairs, or corrective work without extra cost to Owner; at entire cost to contractor, within five (5) days after written notice to contractor by owner."

"Neither final payment of invoices nor any provision in the contract documents shall relieve the contractor of responsibility for faulty materials or workmanship, and, unless otherwise specified, he shall remedy any defects due thereto and pay for any damage to other work resulting therefrom, which shall appear within a period of one year from the date of final approved invoice, where guarantees are required by specifications for longer periods of time, such longer periods shall apply. The Owner shall give notice of observed defects no later than 30 days before expiration of the maintenance period."

On the basis of that language, the trial judge found that Van Cor had warranted and guaranteed its performance and that of its subcontractors, i.e., materials, workmanship and result, and had breached that warranty and guarantee in its defective performance of the contract and failure to make adequate repairs and corrections. As we have previously stated, there is no room for doubt that Van Cor did not perform its work in good and workmanlike fashion, that it used defective materials in construction of the sub-roofing, and that it failed to repair and correct defective work and replace defective materials. Those findings and the

above-quoted contract provisions required a finding that Van Cor has breached the terms of its warranty and guarantee and that Aetna failed to make good the breach under its bond. As agreed in briefs of counsel for both plaintiff and defendants, a construction contract must be performed by the contractor in accordance with plans and specifications which form a part of the construction contract itself. The difference of opinion arises from the interpretation placed upon the quoted contract provisions by the trial judge that Van Cor guaranteed and warranted the desired results of its work and thus enlarged and cemented the walls of its responsibility. The contract terms involved, however, admit of no other conclusion. They speak in clear and unequivocal terms, the legal consequence of which is, in accordance with the established law of this and other jurisdictions, a covenant by Van Cor that the plans and specifications were adequate, that the work contemplated could be constructed and used for the intended purpose, and the desired result would be achieved.

Counsel for all parties agree that a construction contract must be performed by the contractor in accordance with the provisions of the contract documents, including plans and specifications. Their point of disagreement here is the proper interpretation of the contract documents. Defendants contest the interpretation placed upon those documents by the trial judge, particularly the guaranty-warranty provisions of the supplemental general conditions, as well as the interpretation given to paragraph 5(c) and (d) of the general contract. They argue that the guaranty-warranty provisions have no bearing upon whether Van Cor expressly warranted the result, although they concede that Van Cor would be liable with respect to defects due to faulty workmanship or materials. That argu-

ment attempts to limit application of the guaranty-warranty to defective materials and workmanship and render it inapplicable as to the result of the work. We cannot accept that view.

The contract documents as a whole, including the guaranty-warranty provisions, seem to us clearly to show Van Cor's undertaking to guarantee the result, making itself liable under those terms as well as for faulty materials and workmanship. Where a contract contains a guaranty or warranty, expressed or implied. that the builder's work will be sufficient for a particular purpose or to accomplish a certain result, unless waived by the owner, the risk of accomplishing such purpose is on the builder, and there is no substantial performance unless the work is sufficient for such purpose or accomplishes such result: 9 Corpus Juris Secundum, Banks and Banking §81, p. 157. In 17-A C.J.S. 849-50, sec. 515, it is said that under some contracts the contractor is required to repair certain defects for a specified time after the work is completed. Where a contract contains an express warranty to remedy defects due to faulty workmanship or materials appearing within the specified time, he is responsible for defects resulting from such causes which appear within the warranty period and is required to make good his warranty according to its terms, although not for defects arising after the warranty period has elapsed.

The terms of paragraph 5(c) and (d) of the construction contract are clear and when those of the guaranty-warranty in the supplemental general conditions are read with them, we cannot escape the conclusion that Van Cor is liable on both of two legal grounds: (1) faulty materials and workmanship and (2) guarantee of the result. Attempted but ineffectual efforts to make

repairs will not satisfy the guaranty: Duggleby v. Lewis Roofing Co., 116 N.W. 711 (Iowa).

Performance of the work according to plans and specifications is no defense where the contract documents include terms under which the contractor guarantees or warrants that the result desired would be obtained from use of those plans and specifications under contract terms showing that to have been the intent of the parties: Philadelphia Housing Authority v. Turner Construction Co., 343 Pa. 512. There, it was specifically provided in the contract that "where the specification requires in any part of the work a given result to be produced, that the specifications and drawings are adequate and the desired result can be produced under the specifications and drawings." This was held to be a covenant that the specifications were adequate and that the required result could be produced, and that the court dealt with the contract terms before it, which, in each instance, might differ from the terms of other contracts. It refused to follow the rule that nonliability resulted from following the provisions of the plans and specifications only.

While the contract terms before us are not so strong as those in Turner, supra, they do not differ greatly from those in Shopping Center Management Co., Inc. v. Rupp, 343 P.2d, (Wash. 1959) 877, where the contractor was held liable under the language of his guaranty which was construed to guarantee that materials and equipment installed by him would operate satisfactorily under the owner's plans and specifications. Thus, it was immaterial whether certain failure resulted because of the plans and specifications or due to defective materials, equipment or workmanship.

City of Lake View v. MacRitchie, 25 N.E. 663-4 (Ill-

inois 1890), is to the same effect as to the terms of a guaranty provision as to the result of the work, even though specifications as to work and materials were followed.

In this case, we are not dealing with the terms of the standard general conditions for the construction of buildings of the American Institute of Architects, as was the case in Teufel v. Wienir, 411 P. 2d 151 (Wash.). The terms of the contract before us in paragraphs 5(c) and (d) of the general contract and the terms of the guaranty-warranty provisions go substantially beyond mere "responsibility for faulty materials or workmanship" and guarantee the result. But even if they did not, defendants would still be liable because of defective materials and workmanship.

Finally, defendants except to the trial judge's findings that plaintiff has sustained damages in the sum of $208,591.11 as the cost of making necessary repairs to the roofs, roof structures and skylights of the three buildings and the sum of $4,171.82 for architectural and engineering costs required in connection therewith and that Van Cor as principal and Aetna as surety are liable to plaintiff for the total sum of $212,-762.93. Defendants argue that the testimony with respect to damages fails to establish that the correction of roof defects requires replacement of the entire roof deck of each building and that the replacement of only those slabs that have deflected would suffice to correct the sub-roofing defects. With this, we cannot agree.

The measure of damages for defects in the performance of a construction contract is the cost of correcting the defects, and the damages are measured as of the date of the breach: Gaylord Builders, Inc. v. Richmond Metal Mfg. Corp., 186 Pa. Superior Ct. 101; Brourman v. Bova, 198 Pa. Superior Ct. 279; DeAngelo Estate v. Armar Co., supra. John P. S. Donovan, a gen-

eral commercial and institutional contractor with 46 years experience testified that at plaintiff's request he had visited each of the three schools, examined the plans and specification and the Authority's written directive to Van Cor of April 1, 1963. On May 21, 1964, he advised plaintiff that the cost of repairs would be $229,221. He further testified that the cost of repair work as of the preceding September 1963 would be the same because that work could not be undertaken before the following summer when the schools were unoccupied by students. Upon request from the Authority at a later date, August 13, 1968, Donovan submitted an alternate estimate of $147,302.00 for the same work but excluding replacement of the roof slabs. In this regard, he testified that this figure for the same work but for performance in September 1963 would have been approximately 15 percent less than the 1968 price. However, Donovan clearly testified that the cost of repairs involving replacement of roof slabs was predicated upon removal of the entire roof structure of each building, since that was the only method by which the required repairs could be effected.

Defendants offered no credible affirmative testimony to refute plaintiff's proof. Their only witness as to damages was one Caplan, an independent structural engineer who testified to his own lack of qualification as to roofing matters.

In arriving at the cost of repairs figure, the trial judge took into consideration, as he was required to do under the law, Donovan's testimony that the average rate of inflation in 1964 was nine percent and, therefore, his repair estimate of May 1964 would necessarily be nine percent higher than the same cost in April 1963 when the Authority directed repairs be made. Accordingly, a nine percent reduction of $20,629.89 from $229,221.00 was required because the

breach occurred in April 1963, when Van Cor failed to make effective and substantial repairs as directed by the Authority.

The trial judge awarded $4,171.83 for architectural and engineering costs which was two percent of the award made for repair costs. This award was in conformity with the testimony of plaintiff's architect, Shields, that two percent of the repair cost was the fair and reasonable charge for such services. Defendants having offered no credible testimony in refutation thereof, the trial judge was fully justified in so finding.

Defendants further argue that the Authority had a duty to mitigate damages. While the law normally requires the injured party to a contract to mitigate damages following breach by expending a sum of money or otherwise to correct the defective or uncompleted performance for his own and the defaulter's protection, it does not require him to expend large sums of money or incur substantial obligations. This is especially the rule when the party in default has equal opportunity for performance and equal knowledge of the consequences of nonperformance. In such a case, the defaulting party cannot require the injured party to perform for him: 22 Am Jur. 2d, 61, sec. 37 and 203; 25 C.J.S. 704, sec. 34.

Here, the Authority made repairs though limited to those of an emergency nature. This was done because Van Cor had assured the Authority that the necessary repairs would be made and had cautioned against the disturbance of the roof since it (Van Cor) was directing its subcontractors to accomplish those repairs. The trial judge found that repairs necessitated a removal of the entire roof structure. This would involve the expenditure of large sums of money or the incurring of substantial obligations and would not fall within the duty to mitigate damages.

Also raised in defendants' brief is the amendment to Pennsylvania Rule of Civil Procedure 2252(a) permitting more liberal joinder of parties. It is urged that other parties now could be joined in this action and, accordingly, a new trial should be granted for that reason. Suffice it to say that rule 2252(a) was not amended until after the trial of this case. Defendants have recourse against those other parties and subcontractors and had, as disclosed at the trial, already instituted suits against those parties. No reason exists for granting a new trial on those grounds.

## ORDER

And now, May 24, 1971, defendants' exceptions to the trial rulings, findings and decision of the trial judge are hereby dismissed.[1]

---

1. This opinion was written primarily by the Hon. Thomas C. Gawthrop, President Judge, prior to his death, having been concurred in by the Hon. D. T. Marrone.