Commonwealth, Appellant, *v.* One 1958 Oldsmobile Sedan.

Argued December 13, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Russell C. Wismer,* Special Assistant Attorney General, with him *George G. Lindsay* and *Horace A. Segelbaum,* Assistant Attorneys General, and *Anne X. Alpern,* Attorney General, for Commonwealth, appellant.

*E. Harris Baum,* for appellee.

OPINION BY WRIGHT, J., March 22, 1961:

This is an appeal by the Pennsylvania Liquor Control Board from an order of the Court of Quarter Sessions of Philadelphia County denying the Board's petition for forfeiture of a 1958 Oldsmobile sedan, manufacturer's serial No. 587MO3885, and directing the submission by counsel of a decree "in accordance with respective interests of parties".

On February 18, 1960, the Oldsmobile in question was sold by Miracle Motors, Inc., hereinafter referred to as Miracle, to Mr. Marie Hedgepeth. In the transaction, Hedgepeth traded in a Buick which Miracle had sold him on May 30, 1958. At the time Hedgepeth became the registered owner of the Oldsmobile, an encumbrance was created in favor of Miracle in the amount of $2,537.28. Ten days later, on February 28, 1960, police officers of the City of Philadelphia, having received information that the Oldsmobile was being used to transport moonshine whiskey, located the vehicle, parked and unattended, at the southeast corner of 48th and Brown Streets. When no person appeared after several hours, the officers searched the vehicle and found in the trunk twenty-four one-half gallon jugs of untaxed whiskey. On April 5, 1960, the Board filed a petition for forfeiture. No answer was filed by Hedgepeth. Miracle filed an answer denying the Board's averment of ownership in Hedgepeth, and averring that the vehicle "is not owned free and clear by Marie Hedgepeth, but is encumbered by agreement dated February 18, 1960, in the amount of $2,537.28 in favor of Miracle Motors, Inc".

At the hearing before Judge Gleeson on May 26, 1960, it was not disputed that the Oldsmobile was unlawfully used. The sole question to be determined on this appeal is whether the discretion of the Court of Quarter Sessions in a forfeiture proceeding extends to an innocent lien holder who is not the registered owner of the vehicle sought to be condemned.

The record clearly discloses that Miracle had no knowledge, or reason to know, of the Oldsmobile's unlawful use. David Bell, Miracle's assistant manager, testified that, when Hedgepeth purchased the Buick in 1958, a careful credit check was made. Hedgepeth's employer, Sorenson Industries, Darby, reported that

he had been "a steady and honest and very conscientious employe for the past eight years". Kramer Manufacturing Company, 313 Arch Street, Philadelphia, the employer for many years of Hedgepeth's wife, reported that she "was considered one of their faithful, honest and decent employees". The Hedgepeth's landlord for six years at 3921 Willow Street, Philadelphia, reported "that they had been good tenants and there had been no complaint about them in the neighborhood or by any of the other tenants in the building". A similar check, with substantially the same result, was made when Hedgepeth purchased the Oldsmobile in 1960. "Q. Now what form did that sale take? Do you have the written sales contract? A. Yes, sir. We have the regular Pennsylvania Instalment Sales Contract".

Appellant contends that the lower court is chargeable with an abuse of discretion in that the testimony adduced by Miracle "failed to meet the requirements of the law necessary to assert its claim". It becomes necessary to briefly review the applicable provisions of the Liquor Code.[1] As here pertinent, Section 601 provides that "No property rights shall exist in any . . . vehicle . . . used in the . . . illegal transportation of liquor . . . and the same shall be deemed contraband and proceedings for its forfeiture to the Commonwealth may, at the discretion of the board, be instituted in the manner hereinafter provided". Subsections (a) to (d) of Section 602 set forth the method of instituting forfeiture proceedings and bringing the same to issue. The first paragraph of subsection (e) provides that "At the time of said hearing, if the Commonwealth shall produce evidence that the property in question was unlawfully possessed or used, the burden shall be upon the claimant to show (1) that he is the owner

---

[1] Act of April 12, 1951, P. L. 90, Sections 601-603, as amended by the Act of April 20, 1956, P. L. [1955-56] 1508, 47 P.S. 6-601-603.

of said property, (2) that he lawfully acquired the same, and (3) that it was not unlawfully used or possessed". Of particular significance in the present case is the second paragraph of subsection (e), the wording of which was radically changed by the 1956 amendment. In the Act of 1951 the language continues "but if it appears that the property was unlawfully possessed or used, the court shall order it destroyed, delivered to a hospital, or turned over to the board, as hereinafter provided". However, the 1956 amendment to the second paragraph of subsection (e) effects a distinction between equipment and vehicles. In the case of "still, equipment, material or utensil" unlawfully possessed or used, the amendment provides that the court shall order the same destroyed, delivered to a hospital or turned over to the board, as under the original Act. The important addition by the amendment then follows (italics supplied): "or if it appears that said *vehicle,* boat, vessel, container, animal or aircraft was unlawfully possessed or used, the court *may, in its discretion,* adjudge same forfeited and condemned as hereinafter provided". This distinction was also spelled out in the 1956 amendment to Section 603 of the statute.

It is therefore readily apparent, from a reading of the amendments in conjunction with the pertinent sections as originally worded, that the legislature intended to vest in the courts of quarter sessions discretionary power to dispose of vehicles other than by mandatory forfeiture even though the evidence might establish unlawful use. This conclusion is supported by the language in the title of the amendment of April 20, 1956, which reads as follows: "An Act Amending the Act of April twelve, one thousand nine-hundred fifty-one . . . providing for the exercise of discretion in the forfeiture and condemnation of property illegally possessed or used".

Under the 1937 amendment to Section 611 of the Pennsylvania Liquor Control Act, and prior to the amendment of Sections 601-603 of the 1951 Liquor Code by the Act of April 20, 1956, the statutory forfeiture provisions were held to be mandatory, and a vehicle employed in the illegal transportation of liquor was subject to seizure regardless of who the owner was, and whether or not he had knowledge of the illegal use: *Commonwealth v. One 1939 Cadillac Sedan,* 158 Pa. Superior Ct. 392, 45 A. 2d 406; *Commonwealth v. One 1940 Chevrolet Station Wagon,* 159 Pa. Superior Ct. 615, 49 A. 2d 531; *Commonwealth v. One Studebaker Sedan,* 140 Pa. Superior Ct. 197, 14 A. 2d 198. However, since the amendment of April 20, 1956, we have plainly held that the courts of quarter sessions are vested with discretion as to forfeiture where the claimant had no knowledge of the illegal use of the vehicle: *Commonwealth v. One 1957 Chevrolet Sedan,* 191 Pa. Superior Ct. 179, 155 A. 2d 438. Appellant attempts to differentiate that case on the ground that it concerned the claim of a rental agency which was actually the owner of the vehicle, whereas Miracle was not the owner of the Oldsmobile here involved but "had sold it under an installment contract to Hedgepeth which was not in default at the time of the seizure". However, the opinion of President Judge RHODES expressly refers to "an innocent owner or lien holder", and makes no distinction between them. Cf. *Commonwealth v. 1956 Ford Truck,* 17 Pa. D. & C. 2d 176.

Appellant also points to the fact that the Act of May 25, 1956, P. L. [1955-56] 1743, 47 P.S. 2-207, which adds subsection (j) to Section 207 of the Liquor Code, contains a provision that the confiscation of equipment or appurtenances unlawfully used "shall not, in any manner, divest or impair the rights or interest of any bona fide lien holder in the equipment or

appurtenances, who had no knowledge that the same was being used in violation of this Act". It is argued that the word "equipment" has the same meaning in both amendments, and that the intention of the legislature "not to protect the lien of a finance company on an automobile was clearly expressed when the legislature did not insert in Section 602 of the Liquor Code the same provision protecting the rights of a bona fide lien holder as it did in Section 207 (j)". We fail to perceive any merit in this contention. As previously demonstrated, the rights of bona fide lien holders in vehicles are protected by the amendment of April 20, 1956. It is clearly without significance that similar protection does not appear in the amendment of May 25, 1956, which concerns the Board's general powers with regard to sales on unlicensed premises and in fact does not apply to vehicles.

To summarize, it is our view that, in enacting the amendment of April 20, 1956, the legislature intended to vest in the courts of quarter sessions discretion to deal with each vehicle forfeiture application as the equities of the situation may indicate. In the words of the hearing judge in the case at bar: "The Legislature has placed no restriction on the discretion of the court, and apparently did not intend to penalize a wholly innocent lien-holder when it chose to liberalize the rigorous holdings mandatory under the Act of 1951".

Order affirmed.