## Commonwealth, Appellant, *v.* One 1962 Chrysler Hardtop Sedan (Thomas).

Argued June 12, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*William C. Sennett,* Special Assistant Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellant.

*Bernard Goldstone,* with him *Routman, Moore & Goldstone,* for appellee.

OPINION BY WRIGHT, J., September 12, 1963:

This is an appeal by the Pennsylvania Liquor Control Board from an order of the Court of Quarter Sessions of Mercer County denying the Board's petition for forfeiture of a 1962 Chrysler hardtop sedan, manu-

facturer's serial number 81-23139964, and directing that the said motor vehicle be turned over and delivered to the Universal C.I.T. Credit Corporation. The factual situation appears in the following excerpt from the opinion of Judge McKAY for the court below:

"On January 4, 1963, at about 6:35 p.m., agents of the Board and Farrell City Police intercepted a delivery of two and a half gallons of untaxed and illegally sold moonshine whiskey in the possession of Mabel Thomas and Tip Sims, both of 59 Palmer Avenue, Campbell, Ohio. Although the evidence was contradictory as to some of the details of what happened at the time of the interception, we find from the testimony that Tip Sims drove the vehicle, which is the subject of the present proceeding, down an alley and stopped at the rear of 1006½ Lee Avenue, Farrell. Thereupon, Mabel Thomas and three teenage people from Campbell got out of the car and walked into the premises with two gallon of moonshine whiskey concealed in bags. Mrs. Thomas was met on the inside of the premises by police of the City of Farrell who were waiting her arrival as a result of previously received information, and the whiskey was confiscated and Mrs. Thomas placed under arrest.

"Immediately thereafter E. L. Jacklin, an agent of the Liquor Control Board, and Chief Albert Timparo of the Farrell Police Force drove up behind the Chrysler Sedan as Tip Sims, the driver, got out and removed a third package wrapped in a blanket and containing one-half gallon of moonshine whiskey. They arrested Sims.

"At the Farrell Police Station both Sims and Mrs. Thomas pled guilty to unlawful possession of the whiskey which they admitted at the hearing had been delivered to the premises by the Chrysler Sedan, although Sims testified that he had delivered it in the afternoon, unaccompanied, and Mrs. Thomas testified

that she had loaned the car, of which she was the owner, to Sims, not knowing that he planned to transport liquor with it. Both Mrs. Thomas and Sims have entered a plea of guilty in this Court to the charge of illegal possession of whiskey.

"We are satisfied from the evidence that the Chrysler car was used for the illegal transportation of the moonshine whiskey on the evening of January 4, 1963, with the knowledge of Mabel Thomas who was the owner of the vehicle and who participated in the unlawful transportation by Sims.

"The claim of the Universal C.I.T. Credit Corporation is based upon the assignment to it of a chattel mortgage covering the seized vehicle. On October 24, 1963, Mabel Thomas purchased the vehicle from Al Wagner Motor Sales, a dealer in motor vehicles in the City of Youngstown, Ohio, paying therefor $2996.45, which included a down payment of $25 in cash, a trade-in of a 1958 DeSoto two-door sedan at $348, and the execution of a chattel mortgage in the amount of $3374.-28, the difference between the unpaid balance and the amount of the mortgage consisting of a finance charge added by the seller in the amount of $750.83. The mortgage provided for 36 monthly payments of $93.73 to begin November 30, 1962. This mortgage was assigned to the Bell Finance Company on October 24, 1962, that company being owned by the same persons as the Al Wagner Motor Sales, Inc., for $2623.45, and reassigned by the Bell Company on the same date to the Universal C.I.T. Credit Corporation, the present claimant. On the following day, October 25, 1962, a notation of the lien of the present claimant was noted on the mortgage and duly recorded. The amount of the lien being shown is $3374.28. No payments have been made on the mortgage since the confiscation so that the January and February, 1963 payments are

due under the mortgage and by the terms thereof, the title is forfeited to the present claimant.

"Witnesses for the claimant testified that they made a careful credit check of the credit record of Mabel Thomas before they purchased the assignment of the chattel mortgage and found that her rating was good, that she had no suits pending against her, that she had paid off the mortgage on her DeSoto sedan as agreed, and that there was nothing detrimental to her credit. As to her income, they found she received monthly Social Security payments of $260, received monthly rentals from a property she owned in Hubbard, Ohio, in the amount of $40 and $60 per month from the proceeds of a brother's insurance policy being paid in monthly installments, and that she had an equity in the home in which she lived of about $4,000. There was no evidence presented at the trial to indicate that the claimant knew that the automobile was intended to be used by Mrs. Thomas for unlawful transportation of untaxed liquor, nor that she had a criminal record".

Counsel for the Board-appellant first contend that "it was an abuse of discretion by the court of quarter sessions to return the automobile to the finance company". We are not in accord with this contention. It is not disputed that the Chrysler motor vehicle was unlawfully used, and the court below so found. However, we have plainly held that the applicable provisions of the Liquor Code[1] vest discretion in courts of quarter sessions to dispose of vehicles other than by mandatory forfeiture even though the evidence may establish unlawful use: *Commonwealth v. One 1958 Oldsmobile Sedan,* 194 Pa. Superior Ct. 352, 168 A. 2d 776. The opinion below contains the following pertinent statement: "In the present case we do not

---

[1] Act of April 12, 1951, P. L. 90, Sections 601-603, as amended by the Act of April 20, 1956, P. L. [1955-56] 1508, 47 P.S. 6-601-603.

find any reason why we should refuse to exercise this discretion in favor of the present claimant". This conclusion is fully supported by the record, which discloses that a customary and reasonable investigation was conducted concerning the status of the purchaser of the motor vehicle. "There was nothing detrimental against her. She had a good credit rating".

Appellant's second contention is that claimant "failed to sustain its burden and establish that it had no knowledge of the illegal use of the automobile". This contention is based primarily upon the following comment in the opinion below: "We have grave doubts that the purchase of the vehicle by Mrs. Thomas and the financing of the purchase by the present claimant were prudent business transactions". It is our view to the contrary that the court below was warranted in determining that claimant had sustained its burden. In its answer to the petition for forfeiture claimant averred that it had received a good credit report concerning the purchaser, "and had no knowledge at the time of the sale or subsequent thereto that said Mable Thomas was in any way involved in any illegal activity with said vehicle". This averment was supported by the testimony which claimant presented at the hearing. The Board did not show that claimant had reason to suspect that Mrs. Thomas would use the car in any illegal activity. Cf. *Commonwealth v. One 1957 Chevrolet Sedan,* 191 Pa. Superior Ct. 179, 155 A. 2d 438. We do not share appellant's fear "that confiscation will never be allowed where an automobile has been financed". No such rule has been, or is being, promulgated. We can best conclude by repeating our statement in *Commonwealth v. One 1958 Oldsmobile Sedan,* supra, 194 Pa. Superior Ct. 352, 168 A. 2d 776, that "the legislature intended to vest in the courts of quarter sessions discretion to deal with each vehicle forfeiture application as the equities of the situation may

indicate". Cf. *Commonwealth v. One 1959 Chevrolet Impala Coupe,* 201 Pa. Superior Ct. 145, 191 A. 2d 717.

Order affirmed.