## Commonwealth v. Spisak

*C. Gregory Frantz, Asst. District Attorney*, for petitioner.

*Jack James Spisak*, pp, contra.

COFFROTH, *P. J.*, December 5, 1974—The issue here is whether the court may order forfeiture of a pistol carried by defendant in his car, without license, and seized when he was arrested.

The Commonwealth has filed a petition to forfeit the pistol. Forfeiture may be tried on the Commonwealth's petition to forfeit, or on the owner's application for return: Commonwealth v. Blythe, 178 Pa. Superior Ct. 575, 578 (appeal from this Court); Pa. R. Crim. P. 324.

Defendant pleaded guilty to the charge and was placed on probation; at the sentence hearing he objected to forfeiture and requested return of the pistol. We declined to consider the forfeiture request and objection thereto without hearing and argument. Accordingly, the case was scheduled for hearing; defendant was notified, but did not appear.

At the sentence hearing, the Commonwealth informed us that defendant was a non-resident of the Commonwealth, passing through when arrested, at which time the gun was loaded; that defendant had no significant criminal record and that the gun was not wanted according to NCIC check.

The Commonwealth has submitted a brief in which it takes the position that the court may order forfeiture because "the contraband here is of a dangerous nature and could be used for a dangerous use or purpose;" the Commonwealth also reasons that since the gun was loaded and carried without a permit "there is no rational purpose for the weapon except possibly to be used to violate the

law," notwithstanding defendant's credible and uncontradicted assertion that he had it only for self protection and was ignorant of the permit requirement.[1]

The Commonwealth acknowledges that "no specific statutory or case law authority exists in Pennsylvania concerning the forfeiture of a firearm of which the defendant had possession without a necessary permit," thus implying an inherent or common law judicial power to order forfeiture. The cases cited by the Commonwealth are inapposite: in Commonwealth v. Lane, 46 Wash. Co. 147 (1966), gambling devices were forfeited under an empowering statute; Commonwealth v. Phillips, 20 Chester 87 (1971), denied an application to suppress as evidence in a drug case a hashish pipe seized from defendant, and the statements in the case that the pipe was forfeitable because it was "commonly used for the smoking of hashish" were dicta only and might be valid under the forfeiture provisions of the drug statute, Act of April 14, 1972, P.L. 233 (no. 64), 35 PS §780-128.

This court, in Commonwealth v. Kimmel, 27 Somerset 307 (1973), granted an application for return of the murder pistol, "it appearing that claimant is the owner of the weapon and took no part in the crime, and the Commonwealth citing no legal authority for forfeiture under such circumstances (see Commonwealth v. Schilbe, 25 D. & C. 2d 326, 1961)." In Schilbe, supra, the court (Readinger, *J.*) denied the Commonwealth's petition to forfeit a camera used by defendant to take

1. Apparently the Commonwealth does not regard forfeiture of weapons as mandatory in all cases of seizure. In Commonwealth v. Holder (no. 230 Criminal 1974), where defendant also recently pleaded guilty to carrying an unlicensed pistol in his car and was placed on probation, the Commonwealth did not seek forfeiture and voluntarily returned the weapon to defendant after sentence hearing.

obscene pictures, for possession of which defendant was prosecuted. The court said at page 330:

"Obviously, in the absence of any statute providing for the forfeiture of a camera and its accessories used for the purpose of taking obscene pictures, there is no authority to do so. The district attorney overlooks the fact that there is a vast difference between seizing an article and holding it for evidentiary purposes, and the forfeiture of said article."[2]

Schilbe was affirmed per curiam by the Superior Court on the opinion of Judge Readinger (196 Pa. Superior Ct. 361 (1961)).

Our research into the questions here involved leads us to the following conclusions:

## INHERENT POWER

Courts have inherent power to do all things reasonably necessary for the administration of justice within the scope of their jurisdiction: Commonwealth v. Brownmiller, 141 Pa. Superior Ct. 107 (1940), to preserve the efficient and expeditious administration of justice and protect it from being impaired or destroyed: Commonwealth ex rel. Carroll v. Tate, 442 Pa. 45, 53, 274 A. 2d 193 (1971). Such powers relate to things reasonably necessary to the proper operation of the court as such. The key word in this concept of inherent power is "administration": inherent powers relate

2. Compare Commonwealth v. Brown, 49 D. & C. 2d 231 (1970), 25 Somerset 36, where we denied the application of the owner of seized obscene materials for their return following dismissal of the prosecution against him for possession with intent to exhibit, and granted the Commonwealth's request to turn the materials over to the Federal authorities for evidentiary use on a federal charge of transporting them, and left ultimate disposition to the Federal Court. Therefore, we did not reach the issue of forfeiture which had also been raised by the Commonwealth.

essentially to the logistical aspects of the judiciary, its personnel, supply, facilities, procedures and records, and to the preservation of its independence as an equal branch of government. Inherent powers arise only out of reasonable necessity, and when reasonable legislative provision is wanting. "The law is a practical science, and, in the absence of statutory inhibition, our courts may take such steps, regarding matters properly before them, as will promote the administration of justice.": Erie City's Appeal, 297 Pa. 260, 270 (1929). "The inherent power of the court is nonadjudicatory. It does not deal with justiciable matters. It relates to the administration of the court:" Judges v. Wayne County, 172 N.W. 2d 436, 440 (Mich. 1969).

The imposition of forfeiture of property as a consequence of criminal conduct lies outside the area of judicial administration. We see neither occasion nor propriety for using forfeiture of property to secure the efficient and expeditious administration of justice and the integrity of the court as guardian thereof.

The forfeiture proposed in this case is essentially punishment, added to that prescribed by the Crimes Code, December 6, 1972, P.L. 1068, 18 Pa. C.S.A. §§101 et seq., for the offense charged against defendant. "The legislature has exclusive power to determine the penological system of the Commonwealth. It alone can prescribe the punishments to be meted out for crime:" Commonwealth ex rel. Banks v. Cain, 345 Pa. 581, 587 (1942); Commonwealth ex rel. Green v. Keenan, 176 Pa. Superior Ct. 103 (1954). In this area, the courts confine their duties to the determination of guilt and the imposition of corrections only as prescribed by statute, free from the operation of any inherent power to add or subtract from the legislative enactment.

## COMMON LAW FORFEITURE

Nor can we resort to the common law for a judicial forfeiture power. "It is well known that at the common law, in many cases of felonies, the party forfeited his goods and chattels to the Crown. The forfeiture did not, strictly speaking, attach in rem; but it was a part, or at least a consequence, of the judgment of conviction.": The Palmyra, 6 L. Ed. 531, 535. But this doctrine of attainder was regarded by the early colonists as harsh and inhumane, so that attainder was largely abolished or greatly modified. See 18 C.J.S., Convicts, §3; U.S. Constitution, art. I, secs. 9 and 10; Pennsylvania Constitution, art. 1, sec. 19. In 36 Am. Jur. 2d, Forfeitures and Penalties, §15, it is concluded that:

"The forfeiture and disabilities imposed by the early common law on persons attainted by felony are unknown to the laws of this country, and no consequences follow conviction and sentence except such as are declared by law. The ancient common-law doctrine of deodand has likewise been rejected in the United States."[3]

Out of this history has come our abhorrence of forfeitures and the principles that they are not favored in the law, and that statutes creating them are strictly construed. See 37 C.J.S., Forfeitures, §4b; Zanfino Estate, 375 Pa. 501 (1953). In 37 C.J.S., Forfeitures, §5a it is asserted:

"Since forfeitures are not favored, . . . they will not be given effect to, except by the express terms of a statute, and where the facts which purport to

---

3. Deodand is a thing which, for being the cause of the death of a person, was forfeited to God, that is: to the crown for alms and pious purposes, to appease the Divine wrath. See 36 Am. Jur. 2d, Forfeitures and Penalties, §15, note 11, and King v. United States, 364 F. 2d 235 (C.A. 5, 1966), footnote 1.

require such action come clearly and plainly within the provisions of the law."

In King v. U.S., 364 F. 2d 235 (C.A. 5, 1966), the Federal government sought forfeiture of the weapons used in the assassination of President Kennedy and the killing of police officer Tippit while engaged in search for the assassin. The court said, p. 235:

"It would certainly be convenient and it would tend to hasten the termination of what must appear to many to be a very distressful bit of litigation were we able to accept the government's present theory and affirm the trial court's judgment forfeiting the weapons to the United States as a species of Deodands."

The court then went on to deny the forfeiture for failure to show a violation of the forfeiture statute.

Following that decision, the government appropriated the same Kennedy-Tippit guns pursuant to a statute authorizing acquisition for preservation of historical items, and the owners sought compensation from the United States: King v. U.S., 292 F. Supp. 767 (1968). In the course of that opinion the court said, p. 771:

"Under the peculiar facts of this case, one would suppose that under some principle of common law or at least natural law or natural justice, weapons used in the commission of a crime of this magnitude would be subject to forfeiture by the proper authorities and, certainly, that property of this character would not be subject to commercial traffic. It is, therefore, somewhat astonishing to discover that there is not any such principle and that forfeiture is a matter of statutory regulation."

The power of government to deprive the citizen of his property by forfeiture must rest on statute, and

cannot be found in any supposed inherent or common law judicial power: 94 C.J.S., Weapons, §25; 56 Am. Jur., Weapons, §21. Compare the Crimes Code of December 6, 1972, P.L. 1068, 18 Pa. C.S.A. §107, section 107(b) abolishing common law crimes, and section 107(c) preserving to the court the power, inter alia, to declare civil forfeitures when "authorized by law."

## CONTRABAND

The legal term usually used to refer to forfeitable articles of property is "contraband." "Articles of contraband are things and objects outlawed and subject to forfeiture and destruction upon seizure:" Commonwealth v. One Plymouth Sedan, 414 Pa. 540, 543, (1964), reversed on other grounds, 380 U.S. 693, 14 L. Ed. 2d 170 (1965). Contraband consists of "such articles as cannot be owned or possessed legally, or are such as are capable of use only in the commission of crime:" 17 C.J.S., Contraband, p. 510.

Contraband is of two classes: (a) articles whose possession is illegal per se, and (b) articles whose possession is ordinarily lawful but may become unlawful by unlawful use. The forfeiture statutes are well summarized in Commonwealth v. Altizer, 213 Pa. Superior Ct. 201, 204-5, 245 A. 2d 692, 693-94 (1968) as follows:

"In Commonwealth v. One 1958 Plymouth Sedan, 414 Pa. 540, 543, 201 A. 2d 427 (1964), rev'd on other grounds sub nom., One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693 (1965), contraband was stated to be things and objects outlawed and subject to forfeiture and destruction upon seizure. The term has been applied to such articles as cannot be owned or possessed legally, or are such as are capable of use only in the commission of a crime. For example, contraband has been

held to include, in particular connections, an illicit still, membership lists of an organization seeking to overthrow the government of the United States, moonshine liquor, counterfeit money, gambling devices, blackjacks, etc., slot machines and a malt mill. This would apparently establish one category of articles, i.e., contraband per se, considered such because they cannot be possessed legally. There is, however, another class of articles considered contraband stemming not from the nature of the article itself but from the use to which an otherwise legitimate article is put. '"It is the use to which the property is put that renders property, otherwise lawful, rightful to have, use and possess, subject to seizure and forfeiture."' One 1958 Plymouth Sedan, supra, at 543. In that case, an automobile used in the illegal transportation of liquor was held to be contraband and subject to confiscation."

The United States Supreme Court in One Plymouth Sedan, supra, 380 U.S. at 699 also drew the distinction between the two classes of statutory contraband, calling them contraband per se and derivative contraband, as follows (380 U.S. 698):

"The Commonwealth further argues that Boyd's unequivocal statement that the Fourth Amendment applies to forfeiture proceedings as well as criminal prosecutions has been undermined by the statements of this Court in United States v Jeffers, 342 US 48, 54, 96 L ed 59, 65, 72 S Ct 93, and Trupiano v United States, 334 US 699, 710, 92 L ed 1663, 1671, 68 S Ct 1229. Jeffers and Trupiano, unlike Boyd, were not forfeiture cases. They were federal criminal prosecutions. In both cases the Court held that evidence seized in violation of the Fourth Amendment was not admissible notwithstanding the fact that the evidence involved was contraband. By way of dictum, however, since

the point was not before it, the Court stated in these cases that its ruling that the contraband was excludable as illegally seized did not mean that the Government was required to return the illegally imported narcotics to Jeffers or the unregistered still, alcohol and mash to Trupiano.

"The nature of the contraband involved in these cases clearly explains these statements of the Court. Both Trupiano and Jeffers concerned objects the possession of which, without more, constitutes a crime. The repossession of such per se contraband by Jeffers and Trupiano would have subjected them to criminal penalties. The return of the contraband would clearly have frustrated the express public policy against the possession of such objects. See United States v Jeffers, supra, 342 US at 53-54, 96 L ed at 65.

"It is apparent that the nature of the property here, though termed contraband by Pennsylvania, is quite different. There is nothing even remotely criminal in possessing an automobile. It is only the alleged use to which this particular automobile was put that subjects Mr. McGonigle to its possible loss. And it is conceded here that the Commonwealth could not establish an illegal use without using the evidence resulting from the search which is challenged as having been in violation of the Constitution. Furthermore, the return of the automobile to the owner would not subject him to any possible criminal penalties for possession or frustrate any public policy concerning automobiles, as automobiles. This distinction between what has been described as contraband per se and only derivative contraband has indeed been recognized by Pennsylvania itself in its requirement of mandatory forfeiture of illegal liquor, and stills, and only discretionary forfeiture of such things as automobiles illegally used. See Purdon's Pa Stat Ann,

Tit 47, § 6-602(e) (1964 Cum Supp). We, therefore, do not have a case before us in any way analogous to the contraband involved in Jeffers and Trupiano and these cases can in no way be deemed to impair the continued validity of Boyd which, like this case, involved property not intrinsically illegal in character."

It is apparent from the foregoing that the right to possess or not determines whether the article of property seized for criminal involvement is contraband or not. If the property cannot be lawfully possessed or returned, it is contraband and must be forfeited. Such is the consequence when the statute expressly mandates forfeiture under certain circumstances and those circumstances are shown. Such is also the consequence when the statute, although not expressly providing for forfeiture, so prohibits or restricts the possession of the property that it cannot lawfully be held by or returned to the party claiming rightful possession or ownership. The rightful possessor of seized property, whether lawfully or unlawfully seized, is entitled to its return after the needs of justice have been served: Commonwealth ex rel. Policastro v. Keister, 89 Pa. Superior Ct. 198 (1926); Commonwealth v. Brown, supra; Pa. R. Crim. P. 324(a), "unless the court determines that such property is contraband, in which case the court may order the property to be forfeited:" Pa. R. Crim. P. 324(b).

## STATUTORY FORFEITURE

Statutes may constitutionally impose forfeitures of property as a civil or criminal consequence of wrongdoing: 36 Am. Jur. 2d, Forfeitures and Penalties, §16; 37 C.J.S., Forfeitures, §4a. Such statutes are enacted on the principle that all property is held under the implied obligation that the owner's use of it shall not be injurious to the

community, and may be seized and forfeited in the suppression of an evil connected with the use thereof: 37 C.J.S., Forfeitures, §3, p. 6. Thus, contraband articles are outlaws, and are not owned or possessed under the ordinary rules of property law: Commonwealth v. Kaiser, 80 Pa. Superior Ct. 26, 28 (1922).

Civil and criminal forfeitures differ in theory. Criminal forfeitures are, like common law forfeitures, part of the statutory sentence or penalty for conviction of crime and are in personam.[4] Civil penalties are not dependent upon any conviction of crime, but are the in rem consequence of the wrongdoing specified in the statute as the basis for forfeiture. "The thing is here primarily considered as the offender, or rather the offense is attached primarily to the thing; and this, whether the offense be malum prohibitum or malum in se:" The Palmyra, supra, at 535; 37 C.J.S., Forfeitures, §2. This in personam-in rem distinction is recognized generally in the Pennsylvania cases. See Commonwealth v. One Plymouth Sedan, supra, Nu-Ken Novelty, Inc. v. Heller, 220 Pa. Superior Ct. 431, 288 A. 2d 919 (1973); Commonwealth v. Blythe, supra; Pannulla v. Rosenberg, 171 Pa. Superior Ct. 233, 90 A. 2d 267 (1952); Schuettler v. Maurer, 159 Pa. Superior Ct. 110, 46 A. 2d 586 (1946); Commonwealth v. Petrillo, 158 Pa. Superior Ct. 354, 95 A. 2d 404 (1946); Commonwealth v. Heiland, 113

---

4. Such in personam forfeitures are sometimes referred to as "common law" forfeitures, even though prescribed by statute, in order to designate their criminal in personam character. See 37 C.J.S., Forfeitures, §2; MacKinnon v. Ferber, 84 A. 2d 647, 649 (N. J. 1957). They are more accurately referred to as "common law type" forfeitures. See People v. Grant, 127 P. 2d 19 (Cal. 1942). The statutory language is determinative of the nature of the forfeiture, whether in rem or in personam, as illustrated in Commonwealth v. Beloff, 166 Pa. Superior Ct. 286, 292, 70 A. 2d 689 (1950).

Pa. Superior Ct. 534, 173 Atl. 759 (1934) (appeal from this court). The Supreme Court of the United States, however, in reversing Commonwealth v. One Plymouth Sedan, supra, was little influenced by the in personam-in rem distinction and held that the object of civil forfeiture is to penalize for an offense against the law and is therefore "quasi-criminal" in character at p. 175. This has led the Commonwealth Court to say: "it is debatable today whether such proceedings are now properly classified as essentially criminal or civil in nature:" Commonwealth v. 23 Electronically Operated "Pinball" and "Console" Amusement Machines, 11 Pa. Commonwealth Ct. 64, 68 (1973). Compare One 1959 Chevrolet Coupe, 201 Pa. Superior Ct. 145, 150, 191 A. 2d 717 (1963), treating a civil in rem forfeiture as punishment.

There are other differences between criminal and civil forfeitures. In the former, being in personam against the criminal offender, the property seized from defendant but owned by an innocent third party is not forfeitable but is returnable to the owner, whereas in civil in rem forfeiture, which is against the property, ownership is immaterial unless the statute should otherwise provide. See Commonwealth v. Beloff, supra; 36 Am. Jur. 2d, Forfeitures and Penalties, §18; 37 C.J.S., Forfeitures, §5; compare Commonwealth v. Kimmel, supra, and Commonwealth v. One 1958 Oldsmobile Sedan, 194 Pa. Superior Ct. 352, 168 A. 2d 776 (1961). Also, in civil proceedings, the burden of proof is never as high as in criminal proceedings. See Mills Novelty Co. Appeal, 316 Pa. 449, 175 Atl. 548 (1934); Pannulla v. Rosenberg, supra; Commonwealth v. One 1927 Graham Truck, 165 Pa. Superior Ct. 1, 67 A. 2d 655 (1949); Commonwealth v. Petrillo, supra.

Statutory forfeiture may be expressed or implied.

Forfeiture may be implied from the provisions of a statute which makes possession of specific property illegal, even though the statute may not expressly provide for forfeiture; the property cannot lawfully be returned and must of necessity be forfeit if possession is prohibited or if unmet conditions are placed upon its possession. For example, if gambling is illegal but the statute is silent as to forfeiture, those articles useable only for an illegal gambling purpose are contraband per se and cannot be returned, but that would not be true, for example, of the money. No implied forfeiture, then, of the money could be decreed; but, if the statute contains express provisions for forfeiture of gambling devices, the money used in the game is forfeit. Compare Commonwealth v. Blythe, supra.

It is essential that we now examine the statutes pertaining to this case.

## FORFEITURE AND FIREARMS STATUTES

Pennsylvania has a number of express forfeiture statutes.[5] But the firearms provisions of the Crimes Code under which this defendant was prosecuted contain no express forfeiture provisions for its violation.[6] Nor has any other applicable statute been cited to us or uncovered in research.[7]

---

5. Examples are: gambling devices under the Crimes Code, 18 Pa. C.S.A. §5513(b); liquor, equipment and vehicles under the Liquor Code of April 12, 1951, P.L. 90, as amended, 47 PS §6-601; vehicles with defaced serial number under The Vehicle Code of April 29, 1959, P.L. 58, 75 PS §303(b); drugs, containers, etc., under The Uniform Controlled Dangerous Substances Act of April 14, 1972, P.L. 165 (no. 64), 35 PS §780-128; explosives under the Crimes Code, 18 PS §6162(d); game and hunting devices, equipment, firearms and vehicles under the Game Law of June 3, 1937, P.L. 1225, 34 PS §§1311.1209, 1311.1214-16.

6. Nor did the firearms provisions of The Penal Code of June 24, 1939, P.L. 872, 18 PS (app.) §4628.

7. The Federal statutes are not helpful in this case. See the

A pistol is not contraband per se; it may be lawfully owned, possessed and used. It might fall within the second class of contraband as an article whose possession is ordinarily lawful but may become unlawful by unlawful use. But such use alone does not render it forfeit, unless made so by statute.

In Long v. MacMillan, 86 S. E. 2d 477 (S. Car. 1955), the court declared that a pistol of and by itself is not contraband, and the owner from whom it has been taken by police may force its return when no longer required for purposes of justice, unless it has been confiscated under a statute.

In Florida v. Bryant, 250 S. 2d 344 (Fla. 1971), a pistol seized on a charge of felonious possession of the firearm is contraband where, by state law, the conviction of felony deprives one of certain civil rights.

In People v. Collier, 278 N. E. 2d 167 (Ill. 1972), defendant was convicted of aggravated assault. He transferred his rights in the seized weapon to others who, as assignees, petitioned for its return. The petition was granted in the absence of a statute declaring the weapon contraband.

We now turn to the firearms provisions of the Crimes Code which govern this case, to ascertain whether any forfeiture is implied. Section 6106(a) of the code, 18 Pa. C.S.A. §6106a, requires a license "to carry a firearm in any vehicle or concealed on or about his person, except in his place of abode or fixed place of business." Section 6109 provides for the issuance of a license for self protection or other proper reason to a "suitable person." Section 6110 in effect defines a suitable person:

"No person shall deliver a firearm to any person

---

Act of June 19, 1968, 82 Stat. 226, as amended, 18 U.S.C.A. (app.) §§921, et seq., and Act of October 22, 1968, 82 Stat. 1236, 18 U.S.C.A. (app.) §§1201, et seq.

under the age of 18 years, or to one he has reasonable cause to believe has been convicted of a crime of violence, or is a drug addict, an habitual drunkard, or of unsound mind."

Section 6105 says: "No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession or under his control." Section 6111(b) also requires, as a condition of purchasing a firearm, that the purchaser certify that "he has never been convicted in this Commonwealth, or elsewhere, of a crime of violence."

It follows that if the weapon may lawfully be delivered to defendant, he is entitled to its return, otherwise not.

## PROBATION

The forfeiture of a firearm is sometimes imposed as a condition of probation. See Commonwealth v. Grab, 54 D. & C. 233 (1945), where the charge was carrying a firearm in violation of the firearms provisions of The Penal Code.

Imposition of probation by suspending sentence, or in lieu of sentence, is authorized in certain cases by statutes.[8] The acts of 1909 and 1911 expressly authorize probation "on such terms and conditions as it may deem right and proper." Bearing in mind the basic corrective purposes of probation, the power of the court to impose reasonable corrective conditions upon probation may be implied even in the absence of express statutory language authorizing the attachment of conditions. Probation implies

---

8. Act of August 6, 1941, P.L. 861, sec. 25, 61 PS §331.25; Act of June 19, 1911, P.L. 1055, sec. 1, as amended by the Act of May 7, 1925, P.L. 554, sec. 1, 19 PS §1051; Act of May 10, 1909, P.L. 495, sec. 1, 19 PS §1081. For the relationships between these statutes, see Commonwealth v. Kates, 452 Pa. 102, 108-11, 305 A. 2d 701 (1973).

conditions. See People v. Cortez, 199 C. A. 2d 839 (1962); Whitehead v. United States, 155 F. 2d 460, 462 (C.C.A. 6th, 1946), cert. den. 329 U.S. 747 (1946).

Such conditions must be reasonable and must be consistent with the aims and purposes of probation whose merits "are so obvious and so well known that its increasing use should be encouraged by all reasonable means:" Commonwealth v. Ferguson, 201 Pa. Superior Ct. 649, 655 (1963). Probation is a means of "giving such defendant the opportunity of demonstrating that he is worthy of the trust reposed in him that he will not again come in conflict with the criminal law. That is the connotation of probation in its technical sense in this state:" Commonwealth v. Peterson, 172 Pa. Superior Ct. 341, 344, 94 A. 2d 582 (1953). "[T]he basic objective of probation is to provide a means to achieve rehabilitation without resorting to incarceration:" Commonwealth v. Kates, 452 Pa. 102, 115. Probation is revocable when its conditions are violated. "The focus of a probation violation hearing . . . is whether the conduct of the probationer indicates that probation has proven to be an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future antisocial conduct:" Id., pp. 114, 115. "The probation is not a pardon, either absolute or conditional . . . It is an authorized mode of mild and ambulatory punishment, the probation being intended as a reforming discipline. The probationer is not a free man, but is subject to surveillance, and to such restrictions as the court may impose:" State ex rel. Gordon v. Zangerle, 26 N. E. 2d 190 (Ohio 1940); 24 C.J.S., Criminal Law, §1571(2), pp. 456-7.

Although the emphasis is often placed upon the value of probation to the probationer, and the opportunity it affords him, its larger value is to society

in terms of public order, safety, harmony, and economy.

In short, probation is a means of controlling and influencing human behavior, without incarceration, to prevent recurrence of criminal conduct, by supervision of the person, according to restrictive behavioral conditions, during the probationary period, and thereafter by force of the experience, for the welfare of both the individual and society.

All conditions imposed must be rationally correlated to those ends. They must be reasonable and not arbitrary.[9]

There is no justification for confiscation if defendant is a suitable person to receive and carry a firearm. Forfeiture should not automatically and in every case follow from conviction of crime with firearm involvement merely because the gun "is of a dangerous nature and could be used for a dangerous use or purpose."

An alternative, intermediate between immediate forfeiture and return of a weapon, might in a proper case be found to lie in deferring decision until termination of probation, during which period suitability to receive the weapon can be more surely determined. Then the results of probation are

---

9. Conditions of probation may be as variable as are the cases. Sometimes performance of a community service, or of restitutional or restorative labor, or submission to instruction, may be constructive and serve the purpose. In Commonwealth v. Critchfield, et al. (no. 215 Criminal 1973), young defendants convicted of possession of marijuana were directed to write an essay on the subject (Shaulis, *J.*). In Inman v. State, 183 S. E. 2d 413 (Ga. 1971) a condition that defendant maintain a short haircut was disapproved. Payment of fees for court appointed counsel may not be imposed in absence of statute. See People v. Johnson, 140 Cal. Reptr. 75; State v. Gerard, 205 N. W. 2d 374 (Wis. 1973); compare Act of December 2, 1968, P.L. 1144, 16 PS §9960.8(b). As to restitution, see 18 PS (app.) §5019. See, generally, A.B.A. Standards Relating to Probation, Tentative Draft, section 3.2; 24 C.J.S., Criminal Law, sec. 1571(8).

known and, if defendant is a suitable person under sections 6105 and 6110, an application for forfeiture or return would be timely. Thus, the performance of defendant during probation may be added to the requirements of sections 6105 and 6110 of the Crimes Code as the test of suitability to receive the weapon.

## CONCLUSION

The Commonwealth's contention for forfeiture of seized weapons because they are "of a dangerous nature and could be used for a dangerous use or purpose" is untenable. The established law is too clearly against it. Besides, under that standard, the weapon would be subject to forfeiture regardless of conviction. See Biggs v. State, 341 S. W. 2d 737 (Tenn. 1960), where such a pistol forfeiture was denied. Further, the Commonwealth's proposition expresses the philosophy of general gun control legislation which is today highly controversial and which our legislature has declined to adopt.

There being no statute expressly providing for forfeiture of a weapon carried without a permit under 6106(a) of the Crimes Code, the weapon is not contraband and is not forfeitable, and must be returned to the owner, provided he is a suitable person to receive it under section 6110. If he is not a suitable person, the weapon is forfeitable.

## ORDER

Now, December 5th, 1974, the Commonwealth's petition for forfeiture is granted unless defendant shall, within 30 days, satisfy the court that he is a suitable person to receive delivery of the firearm, and that he has complied with all of the conditions of his probation. Costs on defendant.

The clerk shall mail a copy of this opinion and order to defendant by certified mail.